## HUGH McDONALD et al. v. O. I. HANSON et al.

(164 N. W. 8.)

**Educational institutions — common schools — organization of — methods of.**
  1. Chapter 135 of the Session Laws of 1915 construed, and *held* to provide two methods of organizing new common-school districts, namely:

**County commissioners — boards of — county superintendent of schools — petition — property — valuation — school voters — majority — districts affected — proposed new district — three fourths of voters — hearing of petition — notice of.**
  a. The first method is by presenting to the board of county commissioners and county superintendent a petition containing proper and legal requirements as to assessed valuation, and extent of the territory to be contained in the new district to be organized, signed by a majority of the school voters in the districts whose boundaries will be affected by the organization of the new school district, and by at least three fourths of the residents of the territory to be

included in the new school district; such petition must be heard upon thirty days' notice as provided by § 1148 of the Compiled Laws of 1913, and only at the July meeting of the board of county commissioners, as provided by § 1147 of the Compiled Laws of 1913.

**Common schools — organization — petition — how signed — hearing on — notice of — county commissioners.**

b. The second method of organizing a new common-school district is by petition signed by three fourths of the school voters residing in the territory to be organized into the new school district, such petition to comply with the requirements of law as to assessed valuation, and extent of territory in both the old and the new districts; the notice required by § 1148 of the Compiled Laws of 1913 shall also be given, but such petition may be acted upon at the July meeting, or any other meeting of the board of county commissioners, conjointly with the county superintendent of schools.

**Statutes — constitutionality of — general law — uniform operation — special legislation — is not.**

2. Chapter 135 has been examined, and *held* not to be in conflict with, nor does it contravene any of, the provisions of §§ 11, 69, or 70 of the state Constitution; said law is a general law, operating in every part of the state uniformly when applied to like conditions and circumstances, and is in no sense special legislation. The classification of common schools, so far as the same is provided for in the law under consideration, is based upon reason, and is not arbitrary, unreasonable, or discriminating.

Opinion filed April 18, 1917.   Rehearing denied July 25, 1917.

Appeal from the District Court of Traill County, Honorable *Chas. A. Pollock*, Judge.

Affirmed.

*Carmody & Leslie*, for appellants.

A law general in its form, but special in its operation, violates a constitutional inhibition of special legislation as much as if special in form. For the purpose of applying different rules to different subjects, the legislature cannot adopt a mere arbitrary classification. Nichols v. Walter, 37 Minn. 264, 33 N. W. 800; Scowden's Appeal, 96 Pa. 422; Vermont Loan & T. Co. v. Whithed, 2 N. D. 82, 49 N. W. 318; State, Anderson, Prosecutor, v. Trenton, 42 N. J. L. 486; McCarthy v. Com. 110 Pa. 243, 2 Atl. 423, 5 Atl. 215; Morrison v. Bachert, 112 Pa. 322, 5 Atl. 739; State, Closson, Prosecutor v. Board of License & Excise, 48 N. J. L. 438, 5 Atl. 323; Edmonds v. Her-

brandson, 2 N. D. 270, 14 L.R.A. 725, 50 N. W. 970; Davis v. Clark, 106 Pa. 377; Com. ex rel. Fertig v. Patton, 88 Pa. 258; Scranton School Dist.'s Appeal, 113 Pa. 176, 6 Atl. 159; State, Highstown, Prosecutor v. Glenn, 47 N. J. L. 105; State, Long Branch Police, Prosecutor, v. Sloane, 49 N. J. L. 356, 8 Atl. 101.

A law which attempts to give to cities of more than a certain number in population certain rights as to granting licenses not extended to other cities is unconstitutional and void.　State, Clark, Prosecutor, v. Cape May, 50 N. J. L. 558, 14 Atl. 581; State, Highstown, Prosecutor, v. Glenn, 47 N. J. L. 105; State, Long Branch Police, Prosecutor, v. Sloane, 49 N. J. L. 356, 8 Atl. 101.

Such a law must stand on some reason, having regard to the classification.　State ex rel. Dorval v. Hamilton, 20 N. D. 592, 129 N. W. 916; Edmonds v. Herbrandson, 2 N. D. 270, 14 L.R.A. 725, 50 N. W. 970.

Proper classification is permitted, but arbitrary and unreasonable discrimination is forbidden.　Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W. 33, 11 Ann. Cas. 921, 20 Am. Neg. Rep. 453; Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 155, 41 L. ed. 668, 17 Sup. Ct. Rep. 257; Powers Elevator Co. v. Pottner, 16 N. D. 359, 113 N. W. 703.

The Constitution of the United States guarantees equal protection of the laws to all persons, and there can be in the law no provision for taxation by arbitrary classification, but classifications must be founded upon real differences in situation and condition, affording rational ground for difference in treatment.　Northwestern Mut. L. Ins. Co. v. State, 163 Wis. 484, 155 N. W. 609, 158 N. W. 328.

*P. G. Swenson,* for respondents.

The petition was wholly sufficient and was heard and acted upon at the proper time and place by the proper tribunal.　All opportunity was given the voters and taxpayers to appear and offer suggestions and objections.　Sess. Laws 1915, chap. 135; Comp. Laws 1913, § 1147; Tallmadge v. Walker, 34 N. D. 590, 159 N. W. 71.

In the organization of common-school districts, laws restricting as to area, population, and valuation, and providing modes of procedure, are not in conflict with any provision of the Constitution.　Such laws are general and uniform in their operation throughout the state.　Laws

1915, chap. 135; Pol. Code, art. 2, chap. 4; Comp. Laws 1913, § 4079; Pol. Code, art. 1, chaps. 44, 47; Dill. Mun. Corp. 4th ed. § 54.

A provision requiring uniformity of legislation does not mean that all laws must embrace all persons or localities. 6 R. C. L. §§ 414–415; Eckerson v. Des Moines, 137 Iowa, 452, 115 N. W. 177; Hanlan v. Floyd County, 53 Ind. 123; Wisconsin C. R. Co. v. Superior, 152 Wis. 464, 140 N. W. 79; Dawson Soap Co. v. Chicago, 234 Ill. 314, 84 N. E. 920, 14 Ann. Cas. 1131; Wall v. St. Louis County, 105 Minn. 403, 117 N. W. 611; Allan v. Kennard, 81 Neb. 289, 116 N. W. 63; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A. —, —, 156 N. W. 561; State ex rel. Hagen v. Anderson, 22 N. D. 65, 132 N. W. 433; Albright v. Sussex County Lake and Park Commission, 68 N. J. L. 523, 53 Atl. 612; State ex rel. Bray v. Long, 21 Mont. 26, 52 Pac. 645.

A law is not local or special because it classifies counties and townships on the basis of population, resting on a difference in situation or needs. School Dist. v. King, 20 N. D. 614, 127 N. W. 515; Dill. Mun. Corp. 4th ed. § 185; Cooley, Const. Lim. 6th ed. p. 228; Pittsburg's Petition, 217 Pa. 227, 120 Am. St. Rep. 845, 66 Atl. 348; Valverde v. Shattuck, 19 Colo. 104, 41 Am. St. Rep. 208, 34 Pac. 947; Cicero v. Haas, 244 Ill. 551, 91 N. E. 574; McCarter v. McKelvey, 78 N. J. L. 3, 138 Am. St. Rep. 583, 74 Atl. 316; Holmes & B. Furniture Co. v. Hedges, 13 Wash. 696, 43 Pac. 944; State ex rel. Bray v. Long, 21 Mont. 26, 52 Pac. 645; Dawson Soap Co. v. Chicago, 234 Ill. 314, 84 N. E. 920, 14 Ann. Cas. 1131; Hunter v. Tracy, 104 Minn. 378, 116 N. W. 922; Eckerson v. Des Moines, 137 Iowa, 452, 115 N. W. 177; State ex rel. Douglas v. Westfall, 85 Minn. 437, 57 L.R.A. 297, 89 Am. St. Rep. 571, 89 N. W. 175; State ex rel. Baughn v. Ure, 91 Neb. 31, 135 N. W. 224; Douglas v. People, 225 Ill. 536, 8 L.R.A.(N.S.) 1116, 116 Am. St. Rep. 162, 80 N. E. 341; Albright v. Sussex County, Lake & Park Commission, 68 N. J. L. 523, 53 Atl. 612; State ex rel. Probtsfield v. Sharp, 27 Minn. 38, 6 N. W. 408; Wall v. St. Louis County, 105 Minn. 403, 117 N. W. 611; State ex rel. Larson v. Scott, 110 Minn. 461, 126 N. W. 70; State v. Standley, 76 Iowa, 215, 40 N. W. 815; Rev. Codes 1905, § 3013, Comp. Laws 1913, § 4051; State ex rel. Hagen v. Anderson, 22 N. D. 65, 132 N. W. 433; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A. —, —, 156 N. W. 561; People v.

McBride, 234 Ill. 146, 123 Am. St. Rep. 82, 84 N. E. 865, 14 Ann. Cas. 994.

GRACE, J. What may be termed the pleadings in this action are composed of a petition for a writ of certiorari and the return to such writ. Omitting the title and formal parts of such writ, the same is as follows, to wit:

To the above-named court and judge thereof: Now come the above-named plaintiffs and upon the affidavit of Hugh McDonald, Henry A. Gordon, George Vettel, and George Wright, four of the above-named plaintiffs, and upon the affidavit of John Carmody, both of which affidavits are hereto attached, petition and pray said court and judge thereof that a writ of certiorari may be issued directed to the above-named defendants and requiring said defendants and each thereof to certify fully to the said court issuing said writ at a specified time and place within said writ to be specified, all the proceedings by you or any of you taken in the matter of the attempt to divide Caledonia school district in Traill county or create or organize a new district consisting of the civil township of Herberg, which now constitutes a part of said school district, and to annex to the writ a transcript of the record and proceedings therein described and referring to them with convenient certainty, and also a statement of all other matters and proceedings pertaining to matters mentioned in said affidavits by them or any of them had, in order that the proceedings had as mentioned in said affidavit to it and that such proceedings may be reviewed by your Honorable Court, and do further pray that by said writ the parties of the defendant and each of them be required to desist from further proceedings from the matters stated in and reviewed in said writ of certiorari and thus your petitioners will ever pray.

Dated this 22d day of July, A. D. 1916.

John Carmody,
C. E. Leslie.
Attorneys for the above-named plaintiffs.

The petition for writ of certiorari was supported by the affidavit of Hugh McDonald, H. C. Gordon, George Vettel, and George Wright,

to the effect that all of the plaintiffs were resident voters, taxpayers, and freeholders in Caledonia school district. The affidavit further sets forth the names of the board of county commissioners, the county auditor, and the county superintendent of Traill county, who were the acting and duly qualified officers during the times involved in such petition. It is further stated and described in such affidavit all the territory included in Caledonia school district as it then existed, and that Hugh McDonald, George Wright, and Henry Gordon did at such time constitute the school board of Caledonia school district. Such affidavit further describes the number and character of the school buildings within the school district of Caledonia as it then existed, describing among others a large school building the estimated value of which was $6,000, all of which schools were maintained at an expense of about $4,000 per year. That in the year 1915 a vote was had to build a consolidated school building in Bingham township at a cost of $6,000 and a maintenance cost of $3,000 per year. Said affidavit further alleges that the residents and voters of the school district consisting of Herberg township had taken no interest in school matters, did not attend school meetings, and in many instances neglected and refused to send their children to school. And further alleges that a petition was filed on April 29, 1916, with the board of county commissioners of Traill county by residents of Herberg township for a separate school district, to be known as Herberg School District of Traill County, and that thereafter the county superintendent of Traill county attempted to give notice of a hearing of said petition by publication of such notice in the Hillsboro Banner, in the said county of Traill, such notice being published in such paper on June 2d, 9th, 16th, 23d, and 30th, and such notice was signed by Guri Wambheim, then county superintendent, and was dated the 31st day of May, 1916. That pursuant to such notice the county commissioners and the said county superintendent on the 19th day of July, 1916, at 2 o'clock in the afternoon of said day, met in the court room in Hillsboro, in said county of Traill, and had a pretended hearing on said petition, granted the same, and provided for the organization of the township of Herberg into a new school district, to be known as Herberg School District of Traill County. That the board of county commissioners and the said county superintendent are about to complete the organization of

said civil township of Herberg into a school district, and will do so unless restrained. That said petition for the organization of such new school district was signed by sixty-nine people, all voters in Caledonia school district, and all residing within the civil township of Herberg. That there was not on said petition name or signature of any person living in that part of said Caledonia school district within the limits of said townships of Caledonia or Bingham. The affidavit further sets out that there was no legal notice of said hearing published, and that the July meeting of the Board of County Commissioners was on the 3d day of July. That the creation of such new school district would work great injury and hardship to the balance of said Caledonia school district and the voters and taxpayers thereof, and injury also to the children of school age in the township of Herberg.

The return to the writ of certiorari is as follows:

The undersigned, Ole I. Hanson, J. H. Johnson, William Carson, A. C. Ulland, and T. R. Tobiason, members of the board of county commissioners of Traill county, North Dakota, and Guri Wambheim, county superintendent of schools of said Traill county, and Nels O. Lindaas, county auditor of said Traill county, pursuant to the command of the writ of certiorari in the above-entitled matter, to us directed, do hereby certify and return to the district court of the said county of Traill;

That on the 6th day of May, 1916, there was filed in the office of the county superintendent of schools of said Traill county, a petition in writing for the organization of a new school district to be known as "Herberg School District of Traill County, North Dakota," a copy of which is hereto annexed, marked exhibit "1." That thereafter the said board of county commissioners and county superintendent fixed the time for hearing said petition for Wednesday, the 19th day of July, 1916, at 2 o'clock P. M., and a notice of the hearing of said petition was given by the said county superintendent of schools of Traill county, by publication of said notice in the Hillsboro Banner, a weekly newspaper published in the city of Hillsboro, in said Traill county, said newspaper being the newspaper nearest the said school district, and by mailing a copy of said notice to each of the school officers of said Caledonia school district; that a copy of said

notice so published and served is hereto attached, marked exhibit "2," and a copy of the affidavit of publication of said notice is hereto attached and marked exhibit "3," and that a copy of the affidavit of mailing said notice is hereto attached and marked exhibit "4."

That on the 19th day of July, 1916, the said board of county commissioners met pursuant to adjournment, said meeting being an adjourned session of the July, 1916, meeting. That all members of the said board of county commissioners were present. That the said board of county commissioners, together with the county superintendent of schools, constituting a board to act on the petition for the organization of a new school district, met in session at 2 o'clock P. M. on said day, at the county courthouse, in the city of Hillsboro, North Dakota, in accordance with the notice published and mailed, and marked exhibit "2" herein, and then proceeded to consider the petition for the organization of a new school district to be known as "Herberg School District of Traill County, State of North Dakota," from the territory embraced in the civil township of Herberg in said Traill county.

That P. G. Swenson appeared as attorney for the petitioners, and that the following petitioners appeared in person, *viz.:* Grand Baxter, Jalmer Herre, H. D. Reed, Hartvig Lund, Frank Baxter, Gunder Steenerson, B. P. Leirness, J. M. Herberg, Nels Herre, Ernest C. Steenrod, Swan Akason, and Archie Spittler.

That C. E. Leslie appeared as attorney for the school board and parties opposing the granting of the petition, and that the following persons appeared in opposition to the granting of said petition, *viz.:* Hugh McDonald, H. A. Gordon, and George Wright; that Peter Herbrandson and C. L. Gordon entered a special appearance and objected to the considering of said petition.

That the parties opposing the granting of said petition filed written objections to the hearing of said petition, copies of which are hereto attached, marked exhibits "5" and "6" respectively.

The the petitioners offered in evidence petitioners' exhibits "A" and "B," copies of which are hereto attached, marked exhibits "7" and "8." Petitioners also offered in evidence petitioners' exhibits "C" and "D," copies of which are hereto attached and marked exhibits "9" and "10." Also pages "35" and "36," book No. 1, of school officers' record, a copy of which is hereto annexed, marked ex-

hibit "11." That Nels O. Lindaas, county auditor of said Traill county, acted as clerk of the board and kept a record of its proceedings; that a true copy of which record so kept is hereto attached and made a part of this return and marked exhibit "12." That oral testimony was submitted on behalf of the petitioners and on behalf of the parties opposing said petition, but that the same was not reduced to writing.

.Dated at Hillsboro, North Dakota, this 1st day of August, 1916.

Attached to said return was an affidavit of Nels O. Lindaas, which was and is as follows:

State of North Dakota, ⎱ ss:
County of Traill. ⎰

I, Nels O. Lindaas, county auditor of the county of Traill, state of North Dakota, and clerk of the board of county commissioners of said Traill county, pursuant to the command of the writ of certiorari to me directed, do hereby certify and return to the district court of said Traill county: That I, as county auditor of said county, acted as clerk of said board consisting of the members of the board of county commissioners and the county superintendent of schools of said Traill county, on the 19th day of July, 1916, and kept a record of its proceedings; that the petition for the organization of a new school district, notice for hearing same, and all papers, exhibits, and records pertaining to the same, are on file in my office; that the exhibits hereto, being exhibits numbered "1," "2," "3," "4," "5," "6," "7," "8," "9," "10," "11," and "12" are true copies of the original documents, proceedings, and records on file in my office; that I have compared all of said copies hereto attached with the originals on file in my office, and that the same constitute a full, correct, and complete transcript of the records and proceedings in the matter referred to and described in said writ of certiorari.

Given under my hand and seal this 1st day of August, 1916 A. D.

(Signed)　　Nels O. Lindaas.
County Auditor of Traill County,
North Dakota.

The facts in the case are as follows: Plaintiffs are residents and taxpayers of the original school district of Caledonia; that the petition for the organization of the new school district was filed with the county superintendent on May 6, 1916, was in legal form, and contained more than three fourths of all the legal school voters then residing in the territory which the petitioners attempted to have created into a new school district. That notice of the hearing of such petition was given by the county superintendent as hereinbefore stated, and that such notice stated that a hearing would be held in the courthouse on Wednesday, July 19, A. D. 1916, at 2 o'clock P. M. That objection to the hearing of such petition at such time and place was made by Peter Herbrandson and C. L. Gordon, taxpayers of Caledonia school district; and that for the reasons heretofore stated objection to the hearing was made by the officers of Caledonia school district. That the proposed new district consisted of the civil township of Herberg, and had an assessed valuation of more than $120,000, and had an area equal to the major fraction of a congressional township, and such proposed district had residing therein more than twelve children of school age. That the organization of said school district would not leave the district from which such new district was organized with an area of less than one congressional township, nor with an assessed valuation of less than $150,000. After the filing of said petition the board of county commissioners and the county superintendent of schools of Traill county fixed the time for hearing said petition for Wednesday, the 19th day of July, 1916, at 2 o'clock P. M. on that day; and on the 19th day of July, 1916, the board of county commissioners of Traill county met, said meeting being an adjourned session of the regular July, 1916, meeting held at such time and place, together with the county superintendent of schools, being the lawful board constituted by law to act on the petition for the organization of a new school district, which meeting was held at 2 o'clock P. M. on that day, at the courthouse, in the city of Hillsboro, Traill county, and after considering the said petition and the evidence offered in support thereof, and considering the objections thereto, did grant the said petition, and did organize and establish the civil township of Herberg into a new and separate school district known as Herberg School District of Traill County, North Dakota.

Appellant in this case assigns three specifications of error, the first of which is as follows: "The court erred in its conclusions of law and order for judgment because no sufficient notice was given for the hearing of the petition for the formation of such new school district, because the notice was not a notice of a hearing to be had at the regular July session or meeting of the county commissioners."

The propositions of law involved in this assignment of error directly attack the jurisdiction of what is termed the quasi court, that is, the board of county commissioners and the county superintendent of Traill county acting together, to hear and determine such petition on its merits. The main attack of the appellant in this regard is based upon no sufficient notice for the hearing of such petition for the formation of such new school district, the notice not being a notice of the hearing to be had at the regular July session or meeting of the county commissioners. We are thoroughly convinced that there is no force in such assignment of error, that such assignment of error is based upon a misconception and misconstruction of the law concerning the matters under consideration in this case. Chapter 135 of the Session Laws of 1915 provides two distinct and separate methods for the organization of new common-school districts. Chapter 135 reads as follows:

"New Common School Districts. How Organized. The board of county commissioners and county superintendent may organize a new school district from portions of school districts already organized, if in their judgment the organization of a new district is desirable and necessary, upon being petitioned so to do by at least a majority of the school voters residing in the districts, whose boundaries will be affected by the organization of a new district, and by at least three fourths of the residents of the territory to be included in the new district. No school district shall be organized under the provisions of this section which shall have less than $20,000 assessed valuation and shall have residing therein less than twelve children of school age; provided, that when the districts from portions of which such new district is sought to be organized, lie in two or more adjoining counties, such new district shall be organized by the concurrent action of the boards of county commissioners and county superintendents of such counties; provided, further, that action on such organization shall be taken only at the July meeting of the county com-

missioners when petitioned by a majority of the voters residing in each of the districts to be affected.

"Provided further, that the county commissioners and county superintendent of schools may organize a new school district from portions of school districts already organized, if in their judgment a new school district is desirable and necessary, upon being petitioned so to do by at least three fourths of the school voters residing within the territory to be included in the new district, provided, such proposed new district shall have an assessed valuation of at least $120,000, and shall have an area equal to a congressional township or major fraction thereof, and shall have residing therein at least twelve children of school age, provided, that such organization will not leave the district from which such new district is sought to be organized with an area of less than one congressional township and an assessed valuation of at least $150,000."

The first part of this law, as far as the word "affected" occurring just before the word "provided," states the first method for the organization of new common-school districts. Commencing with the word "provided" and including the balance of the chapter constitutes the second method for the organization of new common-school districts. When proceedings are had to organize a new common-school district by the first of these methods, the notice prescribed in § 1148 of the Compiled Laws of 1913 shall be given, and the meeting of the county commissioners at which such petition is to be considered shall be the meeting specified in § 1147 of the Compiled Laws of 1913, being the July meeting of the board of county commissioners; and when proceedings are had in pursuance of the first method a failure to give such proper notice and hold such meeting at the proper place would affect the jurisdiction of what may be termed the quasi court, that is, the board of county commissioners and the county superintendent, to hear and determine the matters involved in such petition; but where proceedings to organize a new common-school district are had in pursuance of, and in agreement with, the second method, provided by chapter 135, when the notice is given specified in § 1148, it is immaterial whether such petition is decided upon at the July meeting or any other meeting of the board of county commissioners, so long as this meeting is held by the county commissioners and the county

superintendent of schools, acting together, and such board, or quasi court or board, as thus constituted, has full jurisdiction to hear and determine such petition for such new common-school district at any meeting of the board of county commissioners and county superintendent, acting together as such board, or quasi court, for the purpose of considering such petition.

The line of demarcation between the two methods of organizing new common-school districts under the law in question is definite and plain, the conditions required to exist by each method being entirely dissimilar. By the first method the petition must be signed by a majority of the school voters residing in the districts whose boundaries will be affected by the organization of the new district, and by at least three fourths of the residents of the territory to be included in the new district. The new district under this method and branch of the law shall have at least $20,000 assessed valuation, and twelve children of school age; and nothing is said as to the amount of assessed valuation which shall be left in the old district after the formation of the new. Under the second method or provision of this law, the necessity for the signatures of any petitioners is eliminated except in the territory which is to form the new district, where three fourths of the school voters are required to sign in order to confer jurisdiction upon the board of county commissioners and superintendent of schools, acting as such board, to organize such new school district. Another provision which is found in the law governing the second method is that the assessed valuation in the new district shall be at least $120,000, and have an area equal to a congressional township or major fraction thereof, and twelve children of school age, and that the old district must also be left with an area of at least a congressional township and $150,000 assessed valuation. It will be seen that there is a wide difference in the requirements of the two methods. It would seem from an inspection of the second method that the public necessity for such new district was so apparent, the old district being so very large, as is shown from the extent of territory required in the new district and the extent to be left in the old, and from the amount of the entire assessed valuation of the old district, and the amount of the assessed valuation required for the new, that it obviated the requirement for considering such petition only at the July meeting,

and permitted the hearing of the petition at any meeting of the board of county commissioners where such petition is presented and notice of the hearing of such petition having theretofore been given for the time required by law. Wherever a petition concerning any school district would show a condition complying with the requirements of the law, which is the foundation of the second method for the organization of common-school districts, public necessity for the welfare and education of the children in such new territory is so pressing that the public welfare and good demand the organization of such new district; and as the old district is left with a large territory and a large assessed valuation, they cannot be heard to complain, in the face of a patent pressing public necessity for better and more convenient educational facilities necessary for the convenience, use, and proper development of the children in the new district. The fact that the taxes will be higher in the remaining part of the old district, and that each taxpayer therein will have a somewhat heavier burden to bear than before, has no particular weight as an argument, as it does not take into consideration the proper education and welfare of the children in the new district and the public welfare and good of the public in general, and is based entirely upon selfish reasons. It is apparent from an inspection of the territory left in the old district in the case at bar, and from the amount of assessed valuation thereof, that if the new district were compelled, not only to have the consent of three fourths of the school voters in the new district, but in addition thereto the consent of a majority of the voters in what remains of the old district, that it would always be within the power of the school voters residing in the old district to prevent the organization of the new district and thereby prevent the convenience, benefits and facilities for education which the new district would enjoy if it also had a well-organized school, well and fully equipped in every respect, and thus be placed in a position to receive greater educational advantages. When the law in question was introduced into the house of representatives in 1915, the last part of the law was introduced which covered and defined what we have referred to herein as the second method. The law defining the first method was not a part of the bill, but when the bill went to the senate, the senate amended it so as to include in such bill the law governing the first method herein spoken of, which

37 N. D.—22.

amendment was accepted and the bill thus amended became law. It will be seen, therefore, that it was clearly the intention of the legislature to create two methods for the organization of new common-school districts where conditions existed which would warrant it. The two methods are entirely separate and distinct, and the procedure under each method is entirely separate and distinct; and, while the second method requires notice the same as required by the first method, the consideration of the petition need not be at the July meeting of the board of county commissioners, but may be had at any meeting, and the only requisites to organize a new school district under the second method are that the new district shall have at least a major fraction of a congressional township, $120,000 assessed valuation, and twelve children of school age, and leave the old district with not less than a congressional township and $150,000 assessed valuation; and when these conditions appear in the petition signed by three fourths of the voters of the new district, and when such petition is considered by the board of county commissioners and the county superintendent of schools, acting and sitting as such quasi court or board, and the conditions, requisites, and matters specified in such petition are found to be true, such board has full authority and jurisdiction to organize such new district at the July or any other meeting of the board of county commissioners.

The second and third assignments of error of the appellant herein may be considered together, as they each relate to the constitutionality of the law under consideration, and also include the question of whether or not the statute under consideration was special legislation. We will include the discussion of these questions all in the same analysis. The sections of the Constitution which it is claimed the law under consideration violates are: § 11, which is as follows: "All laws of a general nature shall have a uniform operation;" § 69: "The legislative assembly shall not pass local or special laws in any of the following enumerated cases, that is to say, . . . 12. Providing for the management of common schools;" § 70: "In all other cases where a general law can be made applicable, no special law shall be enacted." Counsel for the appellant then cites numerous authorities to sustain these various propositions. For instance, that the authorities are agreed that a law "general in its form," but special in its operation, violates a constitutional inhibition

of special legislation as much as if special in form. The cases cited by the counsel sustain this proposition, and it is no doubt but such is a sound proposition of law; but such proposition of law cannot be applied in the case at bar, for the reason that the law under consideration in this case is a law general in its form and general also in its operation. It operates as law throughout the entire state and to every school district similarly situated, and the classification is by no means arbitrary, and is a proper, reasonable, and just classification.

Appellant uses the following language: "There has not been and cannot be any good reason why two civil townships—one a trifle less than a congressional township and the other a trifle bigger—should not have the same privileges, and why the smaller should have privileges the larger has not; nor any good reason why a civil township can secede from another one just because it has a trifle less than $150,000 assessed valuation, while the other with $150,000 assessed valuation cannot secede."

We think from an inspection of the law under consideration that the remaining part of the old district could have exercised the same power that the new district did exercise had it done so in time or cared to. The statement in the law that the new district shall have an assessed valuation of at least $120,000, and shall have an area of a congressional township or a major fraction thereof, means a minimum quantity, and is not a limit as to the maximum; that the real significance of such expression is that such new district shall have an assessed valuation of at least $120,000, and shall have an area at least equal to a congressional township or major fraction thereof, and shall have residing therein at least twelve children of school age. These are minimum quantities, but there is no restriction as to the maximum quantities. The law does not say that the new district may not have more than a congressional township nor more than $120,000 assessed valuation; and there is no doubt but that such new district might have more of assessed valuation and more territory, provided that it does not leave the old district with less than a congressional township, nor less than $150,000 assessed valuation. So long as the minimums are complied with, that is all that is necessary. When the minimums exist under the law the maximums may be as large as may be under the circumstances. We believe this is a proper construction of the language in this section, and, if so, the appellant's contention is without merit; but even without such con-

struction of the statute we think the classification therein reasonable, being based upon the amount of assessed valuation and territory included within the new district, and also taking into consideration the amount of territory remaining in the old district and the assessed valuation thereof. The advantages, if any, in the classification are with the old district, the amount of such valuation in the old district being larger than in the new district, and this in all probability for the reason that the expense of operating the old district, the keeping up of its present institutions, and its present amount of fixed expenses, may be larger than will be required in the new district. Its obligations are already created and exist; and the law in question took particular pains to protect it by a larger amount of assessed valuation as well as territory, and also fixed a minimum amount of such valuation and territory for the new district, both of which classifications seem to be just and reasonable, and each found to be in the greatest interest of the public welfare, education, and public necessity. The law under consideration has a general and uniform operation, and operates alike upon all school corporations in all parts of the state under the same circumstances and conditions, and this is quite sufficient to constitute it a general law, and not special legislation.

There is another branch of the case which we will discuss. The appellant, in addition to invoking the provisions of several sections of the state Constitution, has also cited a paragraph from the decision of Northwestern Mut. L. Ins. Co. v. State, 163 Wis. 484, 155 N. W. 609, 158 N. W. 328, but the reasoning in that case is not applicable to the one at bar. The meaning of Amendment 14 of the Constitution of the United States is that it guarantees equal protection of law to all persons, and relates to individual persons or private corporations in their dealings, contracts, personal affairs, and rights; but such provision of the United States Constitution does not extend to public corporations created by the legislative authority as public agencies for the purpose of facilitating and carrying on matters which are of interest to the state alone, and which are created by legislative power exclusively, and with which the state is in no way bound by contract; and there is no reciprocal stipulation between such agencies and the state; and the objects of their creation and the duties which they are authorized to perform do not have their origin in anything of the nature of a contract. Such

public institutions as counties or school districts are a part of the machinery of the state, invented by the state itself, and brought into existence by the authorities of the state for the purpose of executing and performing certain public duties in aid of the welfare of the state, and are invested with certain corporate powers by the state; and the powers which such corporations exercise, being entirely of a public nature and partaking in no degree whatever of private transactions, remain at all times subject to the will of the legislature, which may do any act regarding such public corporations as it deems to the best interests of the state; may increase or decrease their size, vest them with greater power, or deduct from their powers, and may do with them what is considered best for the state and its growth, development, and protection, without any consultation of the corporation so created; and the legislature may further do this in the manner which to it seems best even if the action of the legislature in this regard should be termed arbitrary. One of the leading cases which enunciates this principle is Laramie County v. Albany County, 92 U. S. 307, 23 L. ed. 552, from which we quote the following: "Institutions of the kind, whether called counties or towns, are the auxiliaries of the state in the important business of municipal rule, and cannot have the least pretension to sustain their privileges or their existence upon anything like a contract between them and the legislature of the state, because there is not and cannot be any reciprocity of stipulation, and their objects and duties are utterly incompatible with everything in the nature of compact. Instead of that the constant practice is to divide large counties and towns and to consolidate small ones to meet the wishes of the residents or to promote the public interests as understood by those who control the action of the legislature. . . . Such corporations are the mere creatures of the legislative will; and inasmuch as all their powers are derived from that source it follows that those powers may be enlarged, modified, or diminished at any time without their consent, or even without notice. They are but subdivisions of the state, deriving even their existence from the legislature. Their officers are nothing more than local agents of the state; and their powers may be revoked or enlarged, and their acts may be set aside or confirmed, at the pleasure of the paramount authority, so long as private rights are not thereby violated."

The case just cited is approved in the case of Atty. Gen. ex rel.

Kies v. Lowrey, which was a case concerning school matters, and the decision of which case is found in 199 U. S. 233, 50 L. ed. 167, 26 Sup. Ct. Rep. 27, wherein the Supreme Court of the United States reaffirms the doctrine laid down in the case from which we have just quoted. The constitutional questions involved in this case are also thoroughly discussed in the school-district division case entitled School Dist. v. King, 20 N. D. 614, 127 N. W. 515. The same rule is also sustained in Cooley's Constitutional Limitations, 6th ed., page 228, and in Valverde v. Shattuck, 19 Colo. 104, 41 Am. St. Rep. 208, 34 Pac. 947. There is no dispute but what a school district is a municipal corporation and a public agency in carrying on the business of the state, and that the officers of such corporation are public agents concerned in the execution of their duties entirely with public business, and all are subject to the will of the legislature.

We cannot discuss all the authorities cited by appellant, nor include in the body of the opinion all of the citations of the respondent; but from a thorough examination of the case, we are satisfied that the judgment of the District Court must be in all things affirmed, and the same is in all things affirmed, with costs.

ROBINSON, J. I concur in result.