2008 ND 88

James TEIGEN, Deb Lundgren, Greg Svenningsen, Farmer's Educational and Co-operative Union of America, North Dakota Division, d/b/a North Dakota Farmers Union, and Dakota Resource Council, Plaintiffs and Appellants

and

Casey Wells, Plaintiff

v.

STATE of North Dakota, Defendant and Appellee.

No. 20070134.

Supreme Court of North Dakota.

May 15, 2008.

Sarah Vogel (argued) and Beth Baumstark (on brief), Sarah Vogel Law Firm, P.C., Bismarck, N.D., for plaintiffs and appellants.

Charles M. Carvell (argued), Assistant Attorney General and Dean J. Haas (on brief), Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1] James Teigen, Deb Lundgren, Greg Svenningsen, the North Dakota Farmers Union, and the Dakota Resource Council (collectively "plaintiffs") appeal from a summary judgment dismissing their declaratory judgment action. Plaintiffs challenge the constitutionality of language in N.D.C.C. §§ 4–28–07(4) and 4–28–07.1(4) requiring the North Dakota State Wheat Commission to expend at least two mills of a wheat tax for "contract[s] for activities related to domestic wheat policy issues, wheat production, promotion, and sales" and providing "[t]he contracts may be with no more than two trade associations that are incorporated in [North Dakota] and which have as their primary purpose the representation of wheat producers." The plaintiffs claim the statutes effectively require the Wheat Commission to contract with two specific entities, the North Dakota Grain Growers Association and the Durum Growers Association of the United States, and violate state constitutional provisions prohibiting special laws, gifts, and special privileges and immunities. We hold the statutes do not violate the state constitutional provisions, and we affirm.

I

[¶ 2] The plaintiffs sued the State to declare the underscored "trade association

clause" language of N.D.C.C. §§ 4–28–07(4) (effective from July 1, 2005, through June 30, 2009) and 4–28–07.1(4) (effective after June 30, 2009) unconstitutional as a special law, as a law granting special privileges and immunities, and as a law making a gift:

> The [wheat] commission shall expend an amount at least equal to that raised by two mills of the levy provided for in this section to contract for activities related to domestic wheat policy issues, wheat production, promotion, and sales. *The contracts may be with no more than two trade associations that are incorporated in this state and which have as their primary purpose the representation of wheat producers.* The contracts must require that any trade association receiving money under this section pay from that money all dues required as a condition of the trade association's membership in any national trade association. The contracts also must prohibit any trade association receiving money under this section from eliminating any dues required as a condition of membership in that trade association or from reducing such dues below the amount required for membership as of January 1, 2005.

The plaintiffs alleged the trade association clause effectively required the Wheat Commission to contract with only two entities, the North Dakota Grain Growers Association and the Durum Growers Association of the United States, and prohibited the Wheat Commission from contracting with any other potential service providers.

[¶ 3] The district court decided the individual plaintiffs, as taxpayers, had standing to challenge the trade association clause, but the Dakota Resource Council and the North Dakota Farmers Union lacked standing to challenge the clause because they did not pay the wheat tax, they had never attempted to contract with the Wheat Commission, there was no indication they would qualify for, or receive, a contract with the Wheat Commission, and they had not suffered a threatened or actual injury. The court subsequently granted the State's motion for summary judgment dismissing the individual plaintiffs' claims, concluding the trade association clause was not unconstitutional as a special law, as a law granting special privileges and immunities, and as a law making a gift.

II

[¶ 4] The plaintiffs argue the North Dakota Farmers Union and the Dakota Resource Council have organizational standing to challenge the constitutionality of the trade association clause, because those entities have an interest in the action in a representative capacity. The plaintiffs also argue the Farmers Union and the Dakota Resource Council have direct standing to challenge the constitutionality of the trade association clause.

[¶ 5] We need not decide if the Farmers Union and the Dakota Resource Council have standing to challenge the constitutionality of the trade association clause, however, because it is sufficient to confer standing if at least one of the plaintiffs have standing to challenge the constitutionality of the clause, and here, the State does not dispute that the individual plaintiffs have standing. *See International Printing Pressmen & Assistants Union v. Meier,* 115 N.W.2d 18, 20 (N.D.1962). *See also Bowsher v. Synar,* 478 U.S. 714, 721, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Any opinion by this Court regarding standing is not necessary for the disposition of the individual plaintiffs' constitutional challenges, and we therefore do not

address the standing issue. *E.g. State v. Hansen*, 2006 ND 139, ¶ 7, 717 N.W.2d 541 (stating Supreme Court does not render advisory opinions).

### III

[¶ 6] The plaintiffs argue the trade association clause violates state constitutional provisions prohibiting special laws, special privileges and immunities, and gifts.

 [¶ 7] Whether a statute is unconstitutional is a question of law, which is fully reviewable on appeal. *Best Products Co., Inc. v. Spaeth*, 461 N.W.2d 91, 96 (N.D.1990). " 'All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution.' " *In re P.F.*, 2008 ND 37, ¶ 7, 744 N.W.2d 724 (quoting *Olson v. Bismarck Parks and Recreation Dist.*, 2002 ND 61, ¶ 11, 642 N.W.2d 864). " 'The justice, wisdom, necessity, utility and expediency of legislation are questions for legislative, and not for judicial determination.' " *Manikowske v. North Dakota Workmen's Comp. Bureau*, 338 N.W.2d 823, 825 (N.D.1983) (quoting *Asbury Hosp. v. Cass County*, 72 N.D. 359, 7 N.W.2d 438, 442 Syllabus ¶ 11 (1943)). This Court exercises the power to declare legislation unconstitutional with great restraint. *MCI Telecomms. Corp. v. Heitkamp*, 523 N.W.2d 548, 552 (N.D.1994). Under N.D. Const. art. VI, § 4, this Court "shall not declare a legislative enactment unconstitutional unless at least four of the members of the court so decide."

### A

[¶ 8] The special law provision of N.D. Const. art. IV, § 13, prohibits the legislature from enacting local or special laws and provides, in relevant part:

The legislative assembly shall enact all laws necessary to carry into effect the provisions of this constitution. Except as otherwise provided in this constitution, no local or special laws may be enacted, nor may the legislative assembly indirectly enact special or local laws by the partial repeal of a general law but laws repealing local or special laws may be enacted.

[¶ 9] The plaintiffs claim the effect of the trade association clause is to create a special law. They argue the district court failed to apply a searching analysis of the effect of the trade association clause under this Court's special law jurisprudence and incorrectly decided the trade association clause was not a special law because it applied to all trade associations incorporated in North Dakota. They contend that although the trade association clause is written in neutral language, the language constitutes artful drafting masking what is, in fact, a special law. They assert the Wheat Commission's administrative construction of the trade association clause establishes it is a special law, because that construction authorizes contracts with only the Grain Growers Association and the Durum Growers Association. They also argue the legislative history for the trade association clause establishes the wheat checkoff was intended to go to only those two entities. They further claim the trade association clause does not require competitive bidding for the contracts and is an implied repeal of North Dakota's state purchasing practices' law in N.D.C.C. ch. 54–44.4, which also establishes the clause is a special law.

[¶ 10] The State responds the trade association clause is not ambiguous and does not create a special class; rather, the statute directs the Wheat Commission to contract with two trade organizations that have as their primary purpose the repre-

sentation of wheat producers. The State argues the comments of individual legislators and others during legislative deliberations do not establish legislative intent and the best evidence of the legislature's intent is the statutory language itself, which does not explicitly apply to the Grain Growers Association and the Durum Growers Association. The State also argues the statute does not repeal the state purchasing practices' law and does not violate the special laws provision because the legislature may make reasonable classifications.

[¶ 11] One court has cogently explained "the proscription against special laws was 'adopted for a very simple and understandable purpose—to put an end to the flood of privileged legislation for particular localities and for private purposes which was common in'" the latter part of the nineteenth century. *Harrisburg Sch. Dist. v. Hickok*, 563 Pa. 391, 761 A.2d 1132, 1135–36 (2000) (quoting *Haverford Twp. v. Siegle*, 346 Pa. 1, 28 A.2d 786, 788 (1942)). *See* 2 Norman J. Singer, *Sutherland Statutory Construction* § 40:1 (6th ed. 2001).

[¶ 12] In *MCI*, 523 N.W.2d at 552, we discussed the difference between general and special laws:

"'A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special.'" *Vermont Loan & Trust Co. v. Whithed*, 2 N.D. 82, 92–3, 49 N.W. 318, 320 (1891) (quoting Sutherland's Statutory Construction ¶ 121). Special laws are made for individual cases of less than a class, due to peculiar conditions and circumstances. *Id.* We have recently said that the special laws language of our state constitution constrains laws relating "'only to particular persons or things of a class, as distinguished from a "general law," which applies to all things or persons of a class.'" *Best Products Co., Inc. v. Spaeth*, 461

N.W.2d 91, 99 (N.D.1990) quoting *State v. First State Bank*, 52 N.D. 231, 202 N.W. 391, 399 (1924). A statute is not special, but general, if "'[i]t operates equally upon all persons and things within the scope of the statute. It operates alike on all persons and property similarly situated.... In other words, it operates alike in all cases where the facts are substantially the same.'" *Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733, 739 (N.D.1988), quoting *State v. First State Bank*, 52 N.D. 231, 202 N.W. 391, 399 (1924).

In *MCI*, 523 N.W.2d at 552–53, we said a statute about local telephone exchange services, on its face, appeared to be a general law applicable to all companies "providing local exchange service," which were similarly situated to each other but not similarly situated with long distance companies that did not provide local exchange service. *See also Bouchard v. Johnson*, 555 N.W.2d 81, 88 (N.D.1996) (skiing responsibility act operates alike to all similarly situated persons operating a skiing facility within the state, which is permissible class; if statute applied only to named ski resort, statute would treat member of class differently and would be unconstitutional special law). We further concluded the classification regarding local telephone exchange services was reasonable and did not violate the special laws provision of our state constitution. *MCI*, at 553–54.

[¶ 13] In *Best Products*, 461 N.W.2d at 99, a case involving a special law challenge to a Sunday closing law, we said the standard of review of a classification under our special laws provision is reasonableness, and a statutory classification is reasonable, if it "'is natural, not arbitrary, and standing upon some reason having regard to the character of the legislation of which it is a feature.'" *Id.* (quoting *Miller v. Norton*, 22 N.D. 196, 132 N.W. 1080, 1091 (1911)).

We further explained a classification is "reasonable if '[i]t bears alike upon all persons and things upon which it operates and it contains no provision that will exclude or impede this uniform operation upon all citizens, subjects and places within the state provided they are brought within the relations and circumstances specified in the statute.'" *Best Products*, at 99 (quoting *Northwestern Bell Tel. Co. v. Wentz*, 103 N.W.2d 245, 256 (N.D.1960)). We concluded the Sunday closing law implemented a legislative purpose of rest and recreation and regulated activity in a manner to achieve a universally accepted legitimate governmental purpose that did not violate the special laws provision of our state constitution. *Best Products*, at 99.

[¶ 14] In assessing whether a challenged law violated the special laws provision of our state constitution, this Court's early decisions recognized the effect of the challenged law was an appropriate consideration. *McDonald v. Hanson*, 37 N.D. 324, 338–40, 164 N.W. 8, 12–13 (1917); *Angell v. Cass County*, 11 N.D. 265, 270, 91 N.W. 72, 73 (1902); *Edmonds v. Herbrandson*, 2 N.D. 270, 279, 50 N.W. 970, 973 (1891). *See* 2 *Sutherland Statutory Construction*, at § 40:5 (stating characterization of statute depends on its substance and not its form; statute may be special in fact though general in form).

[¶ 15] In *Edmonds*, 2 N.D. 270, 50 N.W. at 970 Syllabus ¶ 1, this Court held a statute regulating procedures for relocating county seats violated the prohibition on special laws, because it arbitrarily classified counties by putting into one class all counties having a courthouse and jail worth more than $35,000 when the statute was enacted and forever putting other counties into another class. In *Edmonds*, the class was closed on the date the statute was enacted because the statute forever classified counties based on value of the courthouse and jail on that date, and this Court said if "the legislature [had] not closed the door against accessions to the class of counties having a court-house and jail exceeding $35,000 in value, the classification would have been proper[, b]ut an arbitrary time [was] fixed, after which no county coming within the same conditions which characterize the class can gain admittance to such class." 2 N.D. at 275, 50 N.W. at 972. *See Best Products*, 461 N.W.2d at 99 (citing *Edmonds* as case involving classification based on time and stating the "reason for the classification, time, bore no relationship to the statutory purpose, preventing waste"). In *Edmonds*, this Court explained the class became closed when the statute was enacted and the closed class was arbitrary under the special law provision of the constitution:

But, when the act in express terms prevents any further accession to the class, it is apparent that the classification stands, not upon a reasonable ground based on difference in population, but is purely arbitrary. The act might as well have expressly named the particular objects included, to the exclusion of all others. So far as this particular provision of the constitution against special legislation is concerned, it is immaterial that the act is general in form. The question is always as to its effect. Any other doctrine would render nugatory the prohibition of the fundamental law against special legislation. Under the guise of statutes general in terms, special legislation, in effect, could be adopted with no inconvenience, and the evil to be extirpated would flourish unchecked. Statutes general in terms have been adjudged void as special legislation, because they could operate only upon a part of a class.

2 N.D. at 278–79, 50 N.W. at 973.

[¶ 16] In *Angell*, 11 N.D. at 269–72, 91 N.W. at 73–74, this Court applied estab-

lished rules of construction to a 1901 statute relating to the collection of unpaid real estate taxes, which authorized counties within a class to institute judicial proceedings to collect unpaid taxes upon certain real estate and precluded other counties from instituting judicial proceedings to collect unpaid taxes for the same years. This Court said the express terms of the statute had the appearance and characteristic of a general law. *Id.* at 269, 91 N.W. at 72–73. This Court stated, however, the statute "masquerade[d] as a general law," and concluded the classification was arbitrary and violated the proscription against special laws because it was "in fact and in its practical operation a special law for the collection of taxes" on certain real estate in certain counties only. 11 N.D. at 269–72, 91 N.W. at 73–74. This Court explained the challenged statute effectively created a closed class because the right of any county to use the tax collection remedies provided by the challenged statute depended on whether the county had failed to collect unpaid taxes under a prior 1897 law. *Id.* at 270–72, 91 N.W. at 73–74. If a county was in the closed class of commonly known counties that had not used the 1897 law to collect unpaid taxes, the 1901 law gave those counties "especial privileges" in the form of judicial remedies to also collect taxes for additional years when taxes could not have been collected under the 1897 law. *Id.* Counties that had used the 1897 law, however, could not use the judicial remedies of the 1901 law to collect taxes for those same additional years. *Id.* Although the challenged 1901 statute was written in general terms, it effectively gave counties that had failed to proceed under the 1897 law greater remedies to collect unpaid taxes than the counties that had used the 1897 law to collect unpaid taxes. *Id.* The class was closed because it was based on a past occurrence—whether or not the county had failed to use the 1897 statute to collect unpaid taxes.

[¶ 17] In *McDonald,* 37 N.D. at 338–40, 164 N.W. at 12–13, this Court construed a statute providing two methods of organizing new school districts from existing school districts and held the statute was a general law, operating uniformly throughout the State upon all school districts under the same circumstances and conditions. The classifications in the challenged statute were based upon minimum qualifications for admission into the class and did not preclude future admission to the class. *Id.* at 336–40, 164 N.W. at 11–13. This Court upheld the challenged statute, but recognized a law " 'general in its form, but special in its operation, violates a constitutional inhibition of special legislation as much as if special in form.' " *Id.* at 338–39, 164 N.W. at 12. This Court said, however, the challenged statute, as construed in that case, was general in its form and also general in its operation throughout the state to every school district similarly situated, and this Court held the statutory classification was reasonable and not arbitrary. *Id.* at 338–40, 164 N.W. at 12–13.

[¶ 18] The common inquiry in our special law cases is whether statutory classifications are written in general terms, rather than applying to particular persons or things, and if written in general terms, whether the classification "close[s] the door against accessions to the class." *Edmonds,* 2 N.D. at 275, 50 N.W. at 972. *See* 2 *Sutherland Statutory Construction,* at § 40:6 (stating most authorities agree it is not necessary that every entity be included in the coverage of an act, but none can be excluded so as to preclude qualification for legislative classification; classification must be prospective and permit future entry into class when qualifications met). Under our special law jurisprudence, the standard of review of a classification is

reasonableness and a classification will be upheld if it " 'is natural, not arbitrary, and standing upon some reason having regard to the character of the legislation of which it is a feature.' " *Best Products,* 461 N.W.2d at 99 (quoting *Miller,* 22 N.D. at 222, 132 N.W. at 1091). Our cases recognize the analysis of a special law challenge necessarily involves the interpretation of the challenged statute. *See Bouchard,* 555 N.W.2d at 83–88; *McDonald,* 37 N.D. at 338–40, 164 N.W. at 12–13; *Angell,* 11 N.D. at 269–72, 91 N.W. at 73–74.

▇▇ [¶ 19] Statutory interpretation is a question of law, fully reviewable on appeal. *In re P.F.,* 2008 ND 37, ¶ 11, 744 N.W.2d 724. The primary purpose of statutory interpretation is to determine legislative intent. *Estate of Elken,* 2007 ND 107, ¶ 7, 735 N.W.2d 842. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. If the language of a statute is ambiguous, however, a court may resort to extrinsic aids, including legislative history, to interpret the statute. *Stutsman County v. State Historical Soc'y,* 371 N.W.2d 321, 325 (N.D.1985). It is well established that we construe statutes to avoid constitutional infirmities. *City of Belfield v. Kilkenny,* 2007 ND 44, ¶ 8, 729 N.W.2d 120; *In re G.R.H.,* 2006 ND 56, ¶ 15, 711 N.W.2d 587; *Kjolsrud v. MKB Mgmt. Corp.,* 2003 ND 144, ¶ 7, 669 N.W.2d 82.

▇▇ [¶ 20] The plain language of the trade association clause does not specially refer to the Grain Growers Association or to the Durum Growers Association; rather, the statute is phrased in general terms that the "contracts may be with no more than two trade associations that are incorporated in this state and which have as their primary purpose the representation of wheat producers." The plain language of the trade association clause does not contemplate a closed class and does not preclude other organizations from further accession into the class if they meet those qualifications. *See Souris River Tel. Mut. Aid Corp. v. State,* 162 N.W.2d 685, 691 (N.D.1968) (statutory classification not invalid because it involves one person or corporation if classification is broad enough to apply to others if they exist). The plain language of the trade association clause is similar to the situation in *Bouchard,* 555 N.W.2d at 88, in which we construed a statute for operating a skiing facility and said that statute operated alike for all similarly situated persons and did not apply only to one named ski resort, and to *MCI,* 523 N.W.2d at 552–53, in which we said a statute, on its face, appeared to be a general statute applying to all companies providing local exchange service. The trade association clause operates alike for all similarly situated entities that satisfy the statutory requirements for a contract. The plaintiffs' reliance on *International Printing Pressmen,* 115 N.W.2d at 20, is misplaced, because the statute at issue in that case limited the award of public contracts to an entity with employees from a specifically named union. The trade association clause does not explicitly refer to a specific entity, and the statutory qualifications do not preclude further accession into the class if those qualification are met.

▇▇ [¶ 21] Some statements in the legislative history for the trade association clause and some statements in minutes from meetings of the Wheat Commission

may suggest the clause requires the contracts to be awarded to the Grain Growers Association and to the Durum Growers Association. However, those broad statements are contrary to the plain language of the statute. Although an administrative construction of a statute is ordinarily entitled to some deference if that interpretation does not contradict clear and unambiguous statutory language, the interpretation of a statute is a question of law that is fully reviewable by a court. *Victor v. Workforce Safety & Ins.*, 2006 ND 68, ¶ 12, 711 N.W.2d 188. We conclude the language of the trade association clause is clear and unambiguous, and we need not resort to legislative history or to administrative interpretation to construe the plain language of that statute.

[¶ 22] Contrary to the plaintiffs' claim about an implied repeal of the law for state purchasing practices, N.D.C.C. ch. 54–44.4, there is no language in the trade association clause or N.D.C.C. ch. 54–44.4 that exempts the competitive bidding requirements from the procurement of contractual services by the Wheat Commission. We construe statutes to harmonize them. N.D.C.C. § 1–02–07; *Lawrence v. North Dakota Workers Comp. Bureau*, 2000 ND 60, ¶ 19, 608 N.W.2d 254. Implied repeals of statutes are not favored, and to overcome a presumption against an implied repeal, a conflict between two statutes must be irreconcilable. *Walsvik v. Brandel*, 298 N.W.2d 375, 377 (N.D.1980). The plaintiffs have cited no provisions establishing an irreconcilable conflict between the trade association clause and N.D.C.C. ch. 54–44.4, or excluding these contracts from the state purchasing practices' law, and we have found none. *See* N.D.C.C. §§ 54–44.4–02.1; 54–44.4–05; 54–44.4–12. Although the applicability of the competitive bidding process is not necessary to sustain the constitutionality of

the trade association clause under the special law provision as long as the class is not closed, the competitive bidding process is the mechanism for awarding contracts under the clause. During oral argument to this Court, the State acknowledged the applicability of the state purchasing practices' process if more than two qualified trade associations sought a contract from the Wheat Commission for activities related to domestic wheat policy issues, wheat production, promotion, and sales. This record does not show that more than two trade associations have sought such a contract, and issues about potential violations of the competitive bidding process are not before us.

[¶ 23] On this record, we conclude the trade association clause is a general law that operates alike on all entities similarly situated. We further conclude the general classification for trade associations incorporated in North Dakota and which have as their primary purpose the representation of wheat producers is reasonable in view of the contractual services sought by the Wheat Commission. In our view, the required qualifications for procurement of a contract do not impose arbitrary conditions on entities seeking contracts related to domestic wheat policy issues, wheat production, promotion, and sales. We therefore hold the trade association clause does not violate N.D. Const. art. IV, § 13.

### B

[¶ 24] The plaintiffs argue the trade association clause is unconstitutional as a law granting special privileges and immunities under N.D. Const. art. I, § 21, which provides:

No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or

immunities which upon the same terms shall not be granted to all citizens.

[¶ 25] Article 1, § 21, N.D. Const., the privileges and immunities clause, is this State's equal protection clause. *Bouchard,* 555 N.W.2d at 87. Under equal protection analysis, the standard of review depends on the type of classification. *Id.* When a classification involves a fundamental interest or is inherently suspect, we analyze the classification under strict scrutiny. *Id.* When there is an important substantive right involved in the classification, we apply an intermediate standard of review. *Id.* If there is no fundamental or important substantive interest involved, we analyze the classification under a rational basis standard and sustain the legislation unless it is arbitrary and bears no rational relationship to a legitimate governmental interest. *Id.* The rational basis standard of review is generally applied when statutory classifications involve economic and social matters and do not deprive a class of plaintiffs from access to the courts. *Id.*

[¶ 26] The plaintiffs do not dispute the trade association clause involves social and economic legislation regarding the wheat industry, and we conclude the rational basis standard is the appropriate level of scrutiny for the plaintiffs' challenge. Under the rational basis standard, a legislative classification will be sustained unless it is arbitrary and bears no rational relationship to a legitimate governmental interest. *Bouchard,* 555 N.W.2d at 87; *Best Products,* 461 N.W.2d at 96.

[¶ 27] We conclude it is not unreasonable for the legislature to classify trade associations incorporated in this state and having as their primary purpose the representation of wheat producers from other groups for purposes of contracting for activities related to domestic wheat policy issues, wheat production, pro-

motion and sales. We conclude the legislature's classification of trade associations bears a rational relationship to a legitimate government interest of promoting activities related to domestic wheat policy issues, wheat production, promotion and sales. We therefore hold the trade association clause satisfies the rational basis standard of scrutiny, and the clause does not violate N.D. Const. art. I, § 21.

## C

[¶ 28] The plaintiffs argue the trade association clause is unconstitutional because it constitutes a gift in violation of N.D. Const. art. X, § 18, which provides:

> The state, any county or city may make internal improvements and may engage in any industry, enterprise or business, not prohibited by article XX of the constitution, but neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, nor subscribe to or become the owner of capital stock in any association or corporation.

[¶ 29] The plaintiffs argue the trade association clause constitutes a gift to the Grain Growers Association and the Durum Growers Association, because that statute eliminates competitive bidding and the money paid to the two entities is unrelated to the services provided. Relying on *Herr v. Rudolf,* 75 N.D. 91, 25 N.W.2d 916 (1947) and *Solberg v. State Treasurer,* 78 N.D. 806, 53 N.W.2d 49 (1952), the plaintiffs claim there is no correlation between the value received by the State and the funds paid by the State for the services, in part, because the amount of the final payment from collection of the wheat tax is not known when the contract is executed.

[¶ 30] Under our interpretation of the trade association clause, however, the competitive bidding process is applicable to contracts awarded under the statute. This record does not reflect that more than two trade associations have sought a contract and issues about potential violations of the competitive bidding process are not before us. We agree with the State that this statute does not contemplate a gift; rather it contemplates a contract for services and does not preclude competitive bidding with entities that meet the qualifications imposed by the statute. *Herr* and *Solberg* involved statutory provisions for specifically identified classes of individuals to buy back foreclosed land from the State, *Herr,* 75 N.D. at 95–96, 25 N.W.2d at 918–19, or to buy back mineral interests from the State, *Solberg,* 78 N.D. at 809–10, 53 N.W.2d at 50–51 In both *Herr,* 75 N.D. at 102–03, 25 N.W.2d at 922, and *Solberg,* 78 N.D. at 813–17, 53 N.W.2d at 53–55, this Court concluded the respective statutes violated the gift provision of the constitution. However, neither of those cases involved contracts for services, and we conclude they do not control the resolution of this issue. In the context of a contract, consideration means any benefit conferred or detriment suffered. *Harrington v. Harrington,* 365 N.W.2d 552, 555 (N.D.1985); *Gulden v. Sloan,* 311 N.W.2d 568, 572 (N.D.1981). If consideration exists, courts generally will not inquire into the adequacy or value of the consideration. *Harrington,* at 555; *Gulden,* at 572.

[¶ 31] The record before us indicates the Wheat Commission regularly enters into written contracts with entities qualified under the statute. Those written contracts specifically identify the services to be performed by the entity, restrict the use of funds received from the Wheat Commission to the performance of those services, and impose record-keeping and reporting requirements on the use of the funds. We also note the competitive bidding process helps ensure the State receives a substantial benefit for its contracts and the successful bidders incur a detriment. *See Adams County Record v. Greater North Dakota Ass'n,* 1997 ND 116, ¶ 10, 564 N.W.2d 304 (stating a quid pro quo exists in contract when State receives benefits it seeks and organization is entitled to promised monetary consideration). Although the amount of the payments under the contracts is uncertain because the statute is based on a per bushel mill assessment, there is a rational relationship between larger payments attributable to an increased number of bushels of wheat and the activities and services provided because of that increased quantity of wheat. On this record, we conclude the trade association clause does not violate N.D. Const. art. X, § 18. However, if that amount of money becomes too disproportionate to the services required under the contract, we are not precluded from revisiting this issue. *See Bismarck Pub. Sch. Dist. v. State,* 511 N.W.2d 247, 276 (N.D. 1994) (VandeWalle, C.J., dissenting in part).

IV

[¶ 32] We affirm the judgment.

[¶ 33] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 34] To the extent that dicta in Part III C of the majority opinion could be read as suggesting that any consideration, no matter how minimal, would be sufficient to defeat the North Dakota Constitution, art. X, § 18, prohibition on gifts, I disagree.

[¶ 35] I respectfully reject the idea that private-contract consideration is the appropriate standard for determining whether or not there has been a gift of public funds. The standard contractual consideration between private parties for a valid contract reflects that it is only persons who are sought to be bound. The North Dakota constitutional limitation on gifts is the action of the people in general to restrain the government actors from gifting public funds or property.

[¶ 36] Under an any-consideration-no-matter-how-minimal standard, a public entity could agree to pay $40,000 for a standard wooden pencil and it would not be a gift. Such cannot be the law. *See Adams County Record v. Greater North Dakota Association,* 529 N.W.2d 830, 839 (N.D. 1995) (VandeWalle, C.J., concurring in the result).

[¶ 37] Dale V. Sandstrom