**Leda BOUCHARD, trustee of the heirs of Paulette Laurencelle, Plaintiff,**

v.

**Richard E. JOHNSON, individually, d/b/a Frost Fire Mountain Ski Resort, Defendant.**

**Civil No. 960087.**

Supreme Court of North Dakota.

Oct. 24, 1996.

Michael J. Williams of Maring Williams Law Office, Fargo, for plaintiff.

Robert M. Light of Morley, Morley & Light, Ltd., Grand Forks, for defendant.

VANDE WALLE, Chief Justice.

Invoking Rule 47 of the North Dakota Rules of Appellate Procedure, the Federal District Court for the District of North Dakota certified the following questions of law:

I. Does the North Dakota Skiing Responsibility Act, chapter 53–09 of the North Dakota Century Code, provide an exclusive list of duties for ski area operators, barring other negligence actions by skiers against ski area operators?

II. Does the North Dakota Skiing Responsibility Act, chapter 53–09 of the North Dakota Century Code, violate the equal protection or due process guarantees of the United States or North Dakota Constitutions, or the special laws or open courts provisions of the North Dakota Constitution?

The statement of facts relevant to these questions is supplied by the Federal District Court Order.

In 1994, Paulette Laurencelle was fatally injured while skiing at Frost Fire Ski Resort (Frost Fire) in Walhalla, North Dakota. Paulette, a Canadian citizen, was at Frost Fire as part of a ski trip for Seine River School Division No. 14. Paulette suffered her fatal injuries when she struck a tree while skiing down a run.

In 1995, Leda Bouchard, a Minnesota resident, acting as trustee for Paulette's heirs at law, filed a wrongful death suit against Frost Fire and its owner Richard E. Johnson, in the Federal District Court for the District of North Dakota. Bouchard claimed that Mr. Johnson and Frost Fire acted negligently. Frost Fire defended the action by claiming under the North Dakota Skiers Responsibility Act, N.D.C.C. Ch. 53–09, they were fully insulated from liability, because they fully complied with the statutory duties. Frost Fire moved for summary judgment. Because we have not previously construed N.D.C.C. Ch. 53–09, the Federal District Court certified the questions.

I

The first certified question asks whether the duties imposed on ski facility operators by the North Dakota Skiing Responsibility Act, N.D.C.C. Ch. 53–09, constitute an exclusive list.

 In interpreting a statute, we first determine the legislature's intent by looking to the statutory language. *County of Stutsman v. State Historical Soc.*, 371 N.W.2d 321, 325 (N.D.1985). If the language is unambiguous, we follow the statute. *Id.* We will not interpret a statute as though language not present should have been added. *Haggard v. Meier*, 368 N.W.2d 539, 541 (N.D.1985). However, if the language is ambiguous or doubtful in meaning, we may use extrinsic aids, such as legislative history, to interpret the statute's meaning. *County of Stutsman*, 371 N.W.2d at 325. Also, we may look to other states with similar statutory provisions for guidance in interpretation. *Zuger v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 135, 138 (N.D.1992) (citing *J.P. Furlong Enterprises, Inc. v. Sun Exploration and Production Co.*, 423 N.W.2d 130, 134–35 n. 13–19 (N.D.1988)). We will not construe a statute to reach an absurd result. *E.g., State v. Trosen*, 547 N.W.2d 735, 739 (N.D.1996). Furthermore, we prefer an interpretation which makes the statute effective rather than an interpretation which makes it constitutionally void. *State ex rel. Peterson v. Olson*, 307 N.W.2d 528, 535 (N.D.1981) (citing *Walker v. Omdahl*, 242 N.W.2d 649, 656 (N.D.1976)).

Because it is not readily apparent to us whether or not the legislature intended the operator's duties to be exclusive, we believe to that extent, the act is ambiguous.

The legislative purpose of the North Dakota Skiing Responsibility Act recognizes it is impossible for the operator to eliminate all the dangers involved with skiing because of inherent risks in the sport. N.D.C.C. § 53–09–01. The Act defines areas of responsibility and affirmative acts for the operators and skiers.

Section 53–09–03, defining "Duties of ski operators with respect to ski areas," states, in relevant part:

"Every ski operator shall have the following duties with respect to its operation of a skiing area: * * *

"3. To mark conspicuously the top or entrance to each slope or trail, or area with the appropriate symbol for its relative degree of difficulty and those slopes, trails, or areas which are closed, or portions of which present an unusual obstacle, must be marked at the top or entrance with appropriate symbols.

"4. To maintain one or more trail boards at prominent locations at each ski area displaying that area's network of ski trails and slopes with each trail and slope rated thereon in accordance with the symbols provided for in subsection 3.

"5. To designate by trail board or other means which trails or slopes are open or closed." * * *

Section 53–09–06, defining "Duties of skiers," states in relevant part:

"It is recognized that skiing as a recreational sport is hazardous to skiers, regardless of all feasible safety measures which can be taken. Each skier expressly assumes the risk of and legal responsibility for any injury to person or property which [is] . . . caused by the following: variations in terrain; surface or subsurface snow or ice conditions; bare spots, rocks, trees, or other forms of forest growth or debris. . . ."

 In interpreting section 53–09–03, we conclude this section is a nonexclusive list of duties for ski facility operators. We note, first, there is no language in the statute which states the list of duties is exclusive. Second, there is no evidence in the legislative history or record illustrating the statute was intended as an exclusive list of duties. We find no mention the statute is to be exclusive in the legislative committee hearings. There are comments the statute is to act as a method to limit a ski facility operator's liability, but there is nothing indicating the act is to be a complete bar for recovery. Rather, the intent the statute be nonexclusive is evidenced in section 53–09–11, where the provision calls for a warning to all skiers that "North Dakota law severely *limits* your right to compensation. . . ." (emphasis added). If the Legislature intended N.D.C.C. Ch. 53–09 to act as a complete bar to any recovery, an extreme remedy to the problem of operator liability for inherent risks in skiing, it must be specific. Other states faced with the same question have held their respective skiing responsibility statutes as nonexclusive.

*See Mead v. M.S.B., Inc.,* 264 Mont. 465, 872 P.2d 782 (1994); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037 (Utah 1991).

We believe the better view is contained in the Utah Supreme Court's decision in *Clover v. Snowbird Ski Resort.* There, the court, in interpreting Utah's inherent risk of skiing statute,[1] considered the importance of the inherent risks associated with skiing. *Clover,* 808 P.2d at 1044–45. In *Clover,* the plaintiff was injured when she collided with another skier. *Id.* at 1039. Clover was entering an intermediate ski run when another skier, jumping off the crest of an unauthorized jump, struck her and caused severe injuries. *Id.* The Utah statute specifically stated such injuries did not create liability, because the injuries were caused by the inherent risk of skiing. *Id.* at 1044. The Utah Supreme Court stated:

"It is clear that sections 78–27–51 to –54 protect ski area operators from suits initiated by their patrons who seek recovery for injuries caused by an inherent risk of skiing. The statute, however, does not purport to grant ski area operators complete immunity from all negligence claims initiated by skiers."

*Id.* at 1044. Furthermore, the court went on to state:

"[S]ki area operators are protected from suits to recover for injuries caused by one or more of the dangers listed ... only to the extent that those dangers, under the facts of each case, are integral aspects of the sport of skiing.... The statute, therefore, contemplates that the determination of whether a risk is inherent be made on a case-by-case basis, using the entire statute, not solely the list provided...."

*Id.* at 1044–45.

The court reasoned an interpretation of the statute as an exclusive list of duties would create an absurd result. *Id.* For example, the court stated if a skier fell and suffered an injury because of the operator's negligence, "recovery for injury would depend on whether, in the fall, the skier collide[d] with a danger listed.... Such a result is entirely arbitrary." *Id.* at 1045.

The Montana Supreme Court's holding in *Mead v. M.S.B.* demonstrates the additional application of the nonexclusivity of skiing-responsibility statutes. 872 P.2d 782. In interpreting the Montana skiing-responsibility statute,[2] the court held because the sport

**1.** The Utah inherent risk of skiing statute, Utah Code Ann. §§ 78–27–51 through –54 (1992 and 1996 Supp.), is similar to North Dakota's. The provision states, in relevant part:

"78–27–51. Inherent risks of skiing—Public policy.

"The Legislature finds that the sport of skiing is practiced by a large number of residents of Utah and attracts a large number of nonresidents, significantly contributing to the economy of this state. It further finds that few insurance carriers are willing to provide liability insurance protection to ski area operators and that the premiums charged by those carriers have risen sharply in recent years due to confusion as to whether a skier assumes the risks inherent in the sport of skiing. It is the purpose of this act, therefore, to clarify the law in relation to skiing injuries and the risks inherent in that sport, to establish as a matter of law that certain risks are inherent in that sport, and to provide that, as a matter of public policy, no person engaged in that sport shall recover from a ski operator for injuries resulting from those inherent risks.

"78–27–52. Inherent risks of skiing—Definitions.

"As used in this act:

(1) "Inherent risks of skiing" means those dangers or conditions which are an integral part of the sports of skiing, snowboarding, and ski jumping, including, but not limited to: changing weather conditions, variations or steepness in terrain; snow or ice conditions; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, impact with lift towers and other structures and their components; collisions with other skiers; and a skier's failure to ski or jump within the skier's own ability.

\* \* \* \* \* \*

"78–27–54. Inherent risks of skiing—Trail boards listing inherent risks and limitations on liability.

"Ski area operators shall post trail boards at one or more prominent locations within each ski area which shall include a list of the inherent risks of skiing, and the limitations on liability of ski area operators, as defined in this act."

**2.** The Montana skiers responsibility provision, Mont.Code Ann. §§ 23–2–731—736, states, in relevant part:

"23–2–733. Duties of operator regarding ski areas. Consistent with the duty of reasonable care owed by a ski area operator to a skier, a ski area operator shall:

\* \* \* \* \* \*

(3) maintain one or more trail boards at prominent locations at each ski area displaying that

of skiing itself is inherently dangerous, protecting the ski area owners from liability for their own negligence had no relationship to protecting them from liability for injuries caused by the inherent risk of skiing. *Mead,* 872 P.2d at 786–87 (citing *Brewer v. Ski–Lift, Inc.,* 234 Mont. 109, 762 P.2d 226, 230 (1988)).

So too, mere performance of the duties listed in N.D.C.C. § 53–09–03 does not remove the possibility of injury caused by the inherent risks involved with skiing. When skiing down a run, a person is at risk for injuries which can be caused by many things, including one of the many inherent risks in skiing, such as trees and varying terrain. We recognize skiing is a quasi-dangerous, thrill-seeking sport, and if certain "dangers" are removed, the interest in skiing would be greatly diminished. *Schmitz v. Cannonsburg Skiing Corp.,* 170 Mich.App. 692, 428 N.W.2d 742, 744 (1988). However, an operator's negligent or intentional acts which cause injuries are not a "danger" necessary for the sport.

The Legislature intended to protect operators from the risks inherent in skiing if they took the prescribed measures. It did not intend to immunize the operators from all possible negligence. We conclude the North Dakota Skiing Responsibility Act, N.D.C.C. Ch. 53–09, does not provide an exclusive list of duties for operators of skiing facilities.

Bouchard, in her brief, also discusses the concept of unlisted duties, arguing an injury caused by a design choice in the ski run should create liability.

The Utah Supreme Court addressed this issue. *Clover,* 808 P.2d at 1047. There, the court stated there are two different types of inherent risks associated with skiing. "The first category of risks consists of those risks, such as steep grades, powder, and mogul runs, which skiers wish to confront as an essential characteristic of skiing." *Id.* The court went on further to describe a second category of risks which:

area's network of ski trails and the relative degree of difficulty of the ski trails at that area;
* * * * * *
(5) designate at the start of each day, by trail board or otherwise, which trails are open or

"[C]onsist of those hazards which no one wishes to confront but cannot be alleviated by the use of reasonable care on the part of a ski resort. It is without question that skiing is a dangerous activity. Hazards may exist in locations where they are not readily discoverable. Weather and snow conditions can suddenly change and, without warning, create new hazards where no hazard previously existed. Hence, it is clearly foreseeable that a skier, without skiing recklessly, may momentarily lose control or fall in an unexpected manner. Ski area operators cannot alleviate these risks, [and under the statute] they are not liable for injuries caused by such risks." *Id.*

However, the Utah court stated the ski area operator was not fully insulated from liability. *Id.* When an "injury [is] caused by an unnecessary hazard that could have been eliminated by the use of ordinary care, such a hazard is not, in the ordinary sense of the term, an inherent risk of skiing and would fall outside [the statute]." *Id.*

We believe this is the proper standard. There should be no liability for a ski area operator if the design of the ski run creates natural conditions, necessary to the enjoyment of the sport, and the design is so obviously dangerous the skier assumes the risk. Conversely, if the design problem was created by the operator's negligence and was not an inherent risk associated with the sport, liability for the operator should exist.

Thus, although we construe the statute to limit liability for injuries caused by design defects, this construction does not result in complete insulation from liability for ski operators. For example, if a tree exists as part of the ski run design and does not present a danger beyond what might be anticipated for the skier who assumes the risk inherent in skiing, there should be no liability for injuries caused by the tree. The risk of a collision with a tree of this nature is an inherent risk. However, notwithstanding the express

closed and amend those designations as openings and closures occur during the day[.]"
* * * * * *

reference to trees in section 53–09–06, N.D.C.C., if a tree or tree stump creates a risk which cannot be said to be inherent in the sport design, the operator should be liable for any injuries caused by this danger.

Bouchard further argues the statute conflicts with the provisions of North Dakota's modified comparative fault statute, N.D.C.C. § 32–03.2–02. Bouchard states N.D.C.C. § 53–09–10 "carves out an exception from the general comparative fault provision, despite the fact that the comparative fault statute is on its face applicable to all tort victims. This is an arbitrary, not natural, classification."

Section 53–09–10, "Effect of comparative negligence," states:

"Notwithstanding section 32–03.2–02, any person is, consistent with the provisions of this chapter, barred from recovery for loss or damage resulting from a risk inherent in the sport of skiing, and likewise is so barred where it is established that a person has knowingly exposed oneself to the real or potential hazards of a situation."

Bouchard claims this provision eliminates the application of comparative fault and returns the law to the harsh common law rule of contributory negligence.

■ We believe section 53–09–10 does not act as a bar for recovery, as Bouchard argues, but rather aids in defining the ski area operator's duty. Under section 53–09–10, a skier is barred from recovery when an injury is caused by an inherent risk in skiing. This is consistent with our determination that operators have no duty to—nor in fact can—protect against injuries caused by the inherent risks of skiing. As such, section 53–09–10 does not conflict with N.D.C.C. § 32–03.2–02.

Our conclusion is consistent with our determination the statute does not provide an exclusive list of duties and is in agreement with the Utah Supreme Court and its ruling in *Clover.* 808 P.2d at 1046. *See also O'Donoghue v. Bear Mountain Ski Resort,* 30 Cal.App.4th 188, 35 Cal.Rptr.2d 467, 468 (1994); *Jessup v. Mt. Bachelor, Inc.,* 101 Or.App. 670, 792 P.2d 1232, 1233 (1990); *Danieley v. Goldmine Ski Associates,* 218 Cal.

App.3d 111, 266 Cal.Rptr. 749, 756–57 (4 Dist.1990); *Schmitz,* 428 N.W.2d at 744.

These rulings follow the principle set forth in the landmark decision, *Wright v. Mt. Mansfield Lift, Inc.,* 96 F.Supp. 786 (D.Vt. 1951). This case defined the duty for ski area operators. *Id.* at 791. There, a woman was injured when she struck a stump covered by snow. *Id.* at 790. The Federal District Court for the District of Vermont denied recovery on the basis the stump was an undiscoverable danger which was part of the inherent risk of skiing. *Id.* at 791. The court stated:

"there is no evidence of any dangers existing which reasonable prudence on the parts of the defendants would have foreseen and corrected. . . .

"The trail at the point of the accident was smooth and covered with snow. There were no unexpected obstructions showing. The plaintiff, in hitting the snow-covered stump . . . was merely accepting a danger that inheres in the sport of skiing."

*Id.*

The court went on to quote Chief Justice Cardozo, stating, "The antics of the clown are not the paces of the cloistered cleric. . . . He [the plaintiff] took the chance of a like fate, with whatever damage to his body might ensue from such a fall. The timorous may stay at home." *Wright,* 96 F.Supp. at 791 (quoting *Murphy v. Steeplechase Amusement Co., Inc.,* 250 N.Y. 479, 166 N.E. 173, 174 (1929)). The North Dakota Skiing Responsibility Act encompasses this philosophy as well. The skier bears the responsibility for injuries caused by the inherent risk of skiing.

Our conclusion North Dakota's Skiing Responsibility Act, N.D.C.C. Ch. 53–09, provides a nonexclusive list of duties appears to resolve the question of whether the act violates North Dakota constitutional provisions. However, insofar as questions of constitutionality remain, and in deference to the Federal District Court, we address the remaining certified questions.

II

A

The first part of the second certified question asks whether Chapter 53–09 violates North Dakota's constitutional equal protection guarantee.

Article 1, § 21, N.D. Const., states:

"No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

This provision is generally considered as the North Dakota Constitution's equal protection clause. *Haney v. N.D. Workers Compensation Bureau*, 518 N.W.2d 195, 197 (N.D.1994) (quoting *Matter of Adoption of K.A.S.*, 499 N.W.2d 558, 563 (N.D.1993)). Equal protection analysis should generally be considered when a statute creates a classification of individuals and grants something to one group but not the other.

▮▮▮ The standard of review of a question under equal protection analysis depends on the type of classification. *Hanson v. Williams County*, 389 N.W.2d 319, 323 (N.D. 1986). When a classification involves a "fundamental interest" or is "inherently suspect," we will analyze these classifications under strict scrutiny. *Id.* (citing *Johnson v. Hassett*, 217 N.W.2d 771, 775 (N.D.1974)). When there is "an important substantive right" involved in the classification, an intermediate standard of review is applied. *Hanson*, 389 N.W.2d at 325. Lastly, if there is no fundamental or important substantive interest involved, we will consider the classification under a rational basis standard, where the legislation will be sustained unless it is "patently arbitrary and bears no rational relationship to a legitimate government interest." *Id.* at 323. This level of scrutiny is generally applied when "statutory classifications involve economic or social matters and do not deprive a class of plaintiffs from access to the courts." *Bismarck Public School Dist. 1 v. State*, 511 N.W.2d 247, 257 (N.D.

1994) (quoting *Kavadas v. Lorenzen*, 448 N.W.2d 219, 222 (N.D.1989)).

▮▮▮ The right to recover for personal injury is considered an important substantive interest. Thus, we must apply the intermediate standard of review to determine whether the classification in N.D.C.C. Ch. 53–09 violates the equal protection guarantee of our constitution. This standard requires a "close correspondence between statutory classification and legislative goals." *Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733, 736 (N.D.1988) (quoting *Arneson v. Olson*, 270 N.W.2d 125, 133 (N.D.1978)).

Bouchard first argues Ch. 53–09 violates equal protection because there is no close correspondence between the statutory classification and the legislative goals. Bouchard argues the act creates a "favored status for ski area operators as opposed to other potentially liable parties, and it purports to distinguish between classes of injury victims, i.e. those injured at North Dakota ski areas and those injured in other ways." Bouchard contends the only legislative purpose behind the statute was to "preclude lawsuits against ski area operators (regardless of merit) with the resultant effect of providing affordable liability insurance...." Bouchard reasons the statute creates an impermissible classification by favoring ski area operators over other landowners and gives ski area operators protection from liability.

Bouchard relies on *Hanson v. Williams County*, 389 N.W.2d 319. In *Hanson*, a ten year statute of repose[3] was challenged because it created two different groups of plaintiffs and only provided for recovery in personal injury to one. The statute provided recovery for those who sustained injuries by a product initially purchased ten years earlier or manufactured eleven years prior to the injury, but barred recovery for persons injured outside this time period. *Hanson*, 389 N.W.2d at 326–27. We concluded this classification violated equal protection because it created a complete denial of recovery to a class of plaintiffs based solely on an arbitrary time frame. *Id.* at 328. We found the legislative record did not support the necessity for such a harsh measure. *Id.* Mr. Bouchard

---

3. N.D.C.C. § 28–01.1–02.

compares the limitations on liability found in N.D.C.C. Ch. 53–09 as we have construed it with the complete bar to recovery held unconstitutional in *Hanson*. We are not persuaded.

■ We conclude that N.D.C.C. Ch. 53–09 has a close correspondence between the statutory classification and the legislative goals. The legislative goal of N.D.C.C. Ch. 53–09 is to limit the liability for ski facility operators from some of the inherent risks associated with skiing. This is demonstrated in Section 1 of the statute. There is no disagreement that skiing does entail more inherent risks than other activities. If such limitations did not exist, it is likely ski facility operators would be subject to "virtually unlimited and perpetual exposure to liability...." *Bellemare*, 420 N.W.2d at 737. The legislative intent was to "define those areas of responsibility and affirmative acts for which ski area operators shall be liable...." N.D.C.C. § 53–09–01. This goal is reflected in the committee hearings. Furthermore, as we stated earlier here, the intent was not to totally preclude liability, as Bouchard claims, but rather to limit liability. Thus, it appears that the classification bears a close correspondence to the legislative intent, and as such, does not violate equal protection.

Moreover, we have long held a statute may create reasonable classifications. *E.g., Bellemare*, 420 N.W.2d at 739, and cases cited therein. Here, we are not persuaded the classification of ski operators as opposed to others creates a violation of Art. I, § 21, N.D. Const. The classification merely helps protect a group from liability, which is no different than the classification in *Bellemare*, 420 N.W.2d at 738–39. Thus, because the statute bears a close correspondence to the legislative intent and does not create an impermissible classification, we hold N.D.C.C. Ch. 53–09 does not violate North Dakota's constitutional guarantee to equal protection of the laws.

### B

The Federal District Court next asks whether N.D.C.C. Ch. 53–09 violates the special laws provision of the North Dakota Constitution.

Art. IV, § 13, N.D. Const. states, in relevant part:

\* \* \* \* \* \*

"The legislative assembly shall enact all laws necessary to carry into effect the provisions of this constitution. Except as otherwise provided in this constitution, no local or special laws may be enacted, nor may the legislative assembly indirectly enact special or local laws by the partial repeal of a general law but laws repealing local or special laws may be enacted."

■ It has been long held that, "a statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special." *MCI Telecommunications v. Heitkamp*, 523 N.W.2d 548, 552 (N.D.1994) (quoting *Vermont Loan & Trust Co. v. Whithed*, 2 N.D. 82, 92–3, 49 N.W. 318, 320 (1891)). *See also Gange v. Clerk of the Burleigh County District Court*, 429 N.W.2d 429, 436 (N.D.1988); *Ferch v. Housing Auth. of Cass County*, 79 N.D. 764, 59 N.W.2d 849, 864 (1953). A special law only applies to particular persons or things of a class, while a general law applies to all person and things of a class. *Best Products Co., Inc. v. Spaeth*, 461 N.W.2d 91, 99 (N.D.1990). If a statute operates to treat all persons or members of a class within the scope of the statute equally, the statute is general and not special. *Bellemare*, 420 N.W.2d at 739. A general law "operates alike on all persons and property similarly situated." *Id.* (quoting *State v. First State Bank*, 52 N.D. 231, 202 N.W. 391, 399 (1924)).

■ In our view, N.D.C.C. Ch. 53–09 operates alike to all similarly situated persons. The statute applies to all persons operating a skiing facility within the state. This is a permissible class and does not create a special law. If the statute applied only to Frost Fire Ski Resort, then it would be treating a member of a class differently and would be an unconstitutional special law. This is not the case here, and thus Ch. 53–09 does not violate the special laws provision of the North Dakota Constitution. Bouchard's interpretation would, in effect, prohibit all legislative classifications.

## C

■ Lastly, the Federal District Court asks whether Ch. 53–09 violates the right of access to the courts. Under North Dakota law, there is a constitutional right to access to the courts.

Art. I, § 9, N.D. Const. states:

"All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay. Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct."

This section also acts as the civil due process clause for the North Dakota Constitution. This right of access is not an absolute right. *Federal Land Bank of St. Paul v. Ziebarth,* 520 N.W.2d 51, 56 (N.D.1994) (citing *Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d 167, 172–73 (N.D.1992)).

■ The statute, as we have construed it, is not an absolute bar, and thus it cannot be a denial of Bouchard's access to the courts.

Furthermore, because the statute does not violate the open-courts provision of the North Dakota Constitution, there is no violation of the constitutional guarantee to due process, for the open courts provision serves as North Dakota's civil due process protection as well.

The Federal District Court's abstention in its certification order recognizes our state constitutional provisions are similar to the federal constitution but may be interpreted independently of the federal constitution. Although this Court determines whether or not a state statute violates the federal constitution in a case before us for final decision on that issue, here we defer to the judgment of the Federal Court on the United States Constitution insofar as our opinion on the federal issues is not binding on the Federal Court.

Therefore, as to the certified questions asked by the Federal District Court for the District of North Dakota, we respond:

I. The North Dakota Skiing Responsibility Act, Ch. 53–09, N.D.C.C., does not provide an exclusive list of operator's duties.

II. The North Dakota Skiing Responsibility Act, Ch. 53–09, N.D.C.C., does not violate the special laws and open courts provisions of the North Dakota Constitution, nor does it violate the equal protection and due process clauses of the North Dakota Constitution.

MESCHKE and SANDSTROM, JJ., RALPH J. ERICKSTAD, Surrogate Judge, and MAURICE R. HUNKE, District Judge, concur.

MAURICE R. HUNKE, District Judge, sitting in place of MARING, J., disqualified.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of NEUMANN, J., disqualified.