2008 ND 37
In the Interest of P.F.
Cynthia M. Feland, Burleigh County Assistant State's Attorney, Petitioner and Appellee
v.
P.F., Respondent and Appellant.
No. 20070133
Supreme Court of North Dakota.
Filed February 21, 2008
Cynthia Mae Feland, Assistant State's Attorney, Courthouse, 514 East Thayer, Bismarck, N.D. 58501-4413, for petitioner and appellee.
Kent M. Morrow, P.O. Box 2155, Bismarck, N.D. 58502-2155, for respondent and appellant.
Ken R. Sorenson, Assistant Attorney General, Office of the Attorney General, 600 East Boulevard Avenue, Bismarck, N.D. 58505-0040, for amicus curiae State of North Dakota.
Opinion of the Court by Kapsner, Justice.
KAPSNER, Justice.
[¶1] P.F. appeals from the district court's order for commitment and order denying his motion to have a statute declared unconstitutional. P.F. argues N.D.C.C. § 25-03.3-17 violates the separation of powers doctrine, and N.D.C.C. ch. 25-03.3 violates equal protection. We affirm.

I
[¶2] In 2005, the district court ordered P.F.'s commitment as a sexually dangerous individual, and this Court affirmed the order. In the Interest of P.F., 2006 ND 82, 712 N.W.2d 610.
[¶3] In May 2006, P.F. petitioned for discharge and requested a hearing on the petition, under N.D.C.C. § 25-03.3-18(1). Dr. Joseph Belanger, a psychologist with the North Dakota State Hospital, completed an evaluation and recommended P.F. continue to be committed as a sexually dangerous individual. The district court appointed a psychiatrist, Dr. Edward Kelly, to complete an independent evaluation. Dr. Kelly concluded P.F. meets the statutory requirements for designation as a sexually dangerous individual, P.F. should continue to be committed because he has not engaged in any sex offender treatment, and the most significant portion of P.F's treatment should focus on his alcohol dependence, but also must include sex offender treatment. Based on Dr. Kelly's evaluation, P.F. requested the court to order that he receive chemical dependency treatment before beginning sex offender treatment. In an order continuing the discharge hearing, the district court stated it had informed P.F. the discharge hearing was not the appropriate place to address any type of treatment regime.
[¶4] In February 2007, P.F. moved to have N.D.C.C. ch. 25-03.3, regarding the commitment of sexually dangerous individuals, and N.D.C.C. § 25-03.3-17, regarding post-commitment proceedings and discharge, declared unconstitutional. P.F. argued N.D.C.C. § 25-03.3-17 unconstitutionally delegates judicial authority because it expressly authorizes the executive director of the Department of Human Services ("DHS") to determine whether the committed individual is safe to be at large. He also argued N.D.C.C. ch. 25-03.3 violates the equal protection clause because it does not provide the same procedures as N.D.C.C. ch. 25-03.1 provides for individuals committed because of mental illness or chemical dependency, and there is not any rational basis, close correspondence, or compelling governmental interest justifying the different treatment.
[¶5] The district court concluded the statutes are constitutional and denied P.F.'s motion. The court concluded N.D.C.C. § 25-03.3-17 does not violate the separation of powers doctrine because it allows the executive director of DHS to petition for the release of the committed individual if the director determines the committed individual is safe to be at large. The court considers the director's report, but is not mandated to follow the report, and it requires that the court make the ultimate decision about discharging a committed individual. The district court noted this supplements the right to an annual review in which, if the committee petitions for discharge, the court makes the ultimate decision whether to release the committee. The court concluded N.D.C.C. ch. 25-03.3 does not violate equal protection, regardless of the level of scrutiny applied, because the state has a compelling interest in protecting the public, and P.F. failed to show the legislature is not justified in treating mentally ill and sexually dangerous committees differently.
[¶6] In April 2007, a hearing on P.F.'s petition for discharge was held, and the district court ordered P.F.'s continued commitment. The court also indicated the review hearing was not the appropriate setting to decide whether the court should order chemical dependency treatment.

II
[¶7] Whether a statute is unconstitutional is a question of law, which is fully reviewable on appeal. Riemers v. Grand Forks Herald, 2004 ND 192, ¶ 11, 688 N.W.2d 167. "All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution." Olson v. Bismarck Parks and Recreation Dist., 2002 ND 61, ¶ 11, 642 N.W.2d 864.

A
[¶8] P.F. argues the district court erred when it held N.D.C.C. § 25-03.3-17 does not violate the separation of powers doctrine. He claims N.D.C.C. § 25-03.3-17 unconstitutionally delegates judicial authority because it mandates that the executive director of DHS, rather than the court, decide when a committed individual is safe to be at large.
[¶9] The procedure for post-commitment proceedings and discharge is contained in N.D.C.C. § 25-03.3-17, which states:
1. A committed individual must remain in the care, custody, and control of the executive director until, in the opinion of the executive director, the individual is safe to be at large.
2. Each committed individual must have an examination of that individual's mental condition at least once a year. A report regarding the examination must be provided to the court that committed the individual. At the time of the annual examination, the committed individual has the right to have an expert examine the individual, and, upon the request of an indigent committed individual, the court shall appoint a qualified expert to examine the committed individual and report to the court. The department of human services shall compensate a qualified expert appointed by the court in a reasonable amount based on time and expenses. That expert must have reasonable access to the committed individual and to all records relating to the committed individual, including confidential records.
. . . .
4. After any report pursuant to this section is provided to the court, the court may order further examination and investigation of the committed individual as the court considers necessary. The court may set the matter for a hearing. At the hearing, the committed individual is entitled to be present and to the benefit of the protections afforded at the commitment proceeding. The state's attorney shall represent the state at the hearing. After the hearing, the court shall determine whether the committed individual is to be discharged or to be retained as a sexually dangerous individual in the care, custody, and control of the executive director.
5. The executive director may only discharge a sexually dangerous individual from commitment pursuant to a court order. The executive director may petition the committing court at any time for the discharge of the committed individual.
[¶10] The district court held P.F. failed to establish N.D.C.C. § 25-03.3-17 violates the separation of powers doctrine. In interpreting the statute, the court said:
Reading the statute as a whole to give effect to each section and to the Legislature's intent, the executive director is able to petition at any time for the release of the committee if he determines the committee is safe to be at large. Otherwise, the committee is entitled to an annual review where the court considers the report of the executive director, but is not mandated to follow that report. In either case, the court makes the ultimate decision on whether to release the committee.
P.F. claims the district court erroneously misread the statute and confused the ability of the executive director to petition for release with the plain wording of the statute, which mandates that an individual may not be released until the executive director decides the individual is safe to be at large.
[¶11] The interpretation of a statute is a question of law, which is fully reviewable on appeal. In re Estate of Elken, 2007 ND 107, ¶ 7, 735 N.W.2d 842.
The primary objective in interpreting a statute is to determine legislative intent. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1-02-03 and 1-02-38(2). We construe statutes to give effect to all their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1-02-38(2) and (4). We also construe statutes to avoid constitutional infirmities.
Id. (citations omitted). We avoid interpreting statutes in a way that would lead to unreasonable or absurd consequences, and we presume a just and reasonable result was intended. State ex rel. Workforce Safety, and Ins. v. Altru Health Sys., 2007 ND 38, ¶ 15, 729 N.W.2d 113.
[¶12] It would be unreasonable to interpret N.D.C.C. § 25-03.3-17 as prohibiting the committed individual's release until the executive director decides the individual is safe to be at large and should be discharged. Rather, when N.D.C.C. § 25-03.3-17(1) and (5) are read together to give effect to each provision and the legislature's intent, the executive director may petition for discharge if the executive director decides that discharge is appropriate because the individual is now safe to be at large. In addition the committed individual is entitled to petition for discharge annually. N.D.C.C. § 25-03.3-18. Thus, there is an opportunity for discharge independent of the determination of the executive director. In either case, the court ultimately decides whether the committed individual is to be discharged, and the executive director may not discharge the individual until directed to by a court order. We conclude N.D.C.C. § 25-03.3-17 does not violate the separation of powers doctrine by unconstitutionally delegating judicial authority to the executive director.
[¶13] Furthermore, to the extent N.D.C.C. § 25-03.3-17(1) represents a practical impediment to discharge, P.F. does not have standing to challenge the statute because P.F. did not show that he was denied release based upon the executive director's decision. P.F. petitioned for discharge under N.D.C.C. § 25-03.3-18. The record contains no report of the executive director. A party only has standing if he has suffered some threatened or actual injury resulting from the alleged illegal action, and the claimed harm is not a generalized grievance shared by all or a large class of citizens. Flatt ex rel. Flatt v. Kantak, 2004 ND 173, ¶ 38, 687 N.W.2d 208. The plaintiff must assert his own legal rights and interests, and "[w]here the feature which allegedly makes a statute unconstitutional is not shown to exist in the case of the party challenging the statute, then he is in effect arguing the unconstitutionality of the statute on the ground that it is unconstitutional as applied to others." State v. Morris, 331 N.W.2d 48, 58 (N.D. 1983). The district court did not deny P.F.'s application for discharge based on a decision by the executive director that P.F. should not be released, but instead the court said:
From clear and convincing evidence, the Court finds that the Respondent continues to suffer from a severe anti-social disorder. That the Respondent has not received sex offender treatment sufficient to lower his risk of engaging in further acts of sexually predatory conduct as evidenced by the report of both the State's expert and the independent expert.
Based on those findings the court ordered P.F.'s continued commitment. P.F. has not shown that the court delegated its authority to decide whether to continue P.F.'s commitment to the executive director and will continue to refuse to release P.F. until the executive director petitions for release. We conclude P.F. has not shown N.D.C.C. § 25-03.3-17 is unconstitutional as applied to him.

B
[¶14] P.F. argues the district court erred in concluding N.D.C.C. ch. 25-03.3 does not violate the equal protection clauses of the United States and North Dakota Constitutions. P.F. claims individuals with mental illness or chemical dependency committed under N.D.C.C. ch. 25-03.1, and those committed as sexually dangerous individuals under N.D.C.C. ch. 25-03.3, are similarly situated classes, and therefore there must be a rational basis, close correspondence, or a compelling governmental interest in treating mentally ill and sexually dangerous individuals differently. He specifically compares N.D.C.C. § 25-03.1-21, which requires the court to "review a report assessing the availability and appropriateness for the respondent of treatment programs other than hospitalization which has been prepared and submitted by the state hospital or treatment facility," and N.D.C.C. § 25-03.3-13, which states, "[t]he executive director shall place the respondent in an appropriate facility or program at which treatment is available. The appropriate treatment facility or program must be the least restrictive available treatment facility or program necessary to achieve the purposes of this chapter." He contends individuals committed as sexually dangerous individuals are treated differently because N.D.C.C. § 25-03.3-13 removes the determination of the "least restrictive treatment program or facility" from the court and gives it to the executive director without any basis for the different treatment.
[¶15] The federal constitutional right to equal protection is provided in Amend. XIV, § 1, U.S. Const., which states, "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Article I, §§ 21 and 22, N.D. Const., provide our state constitutional guarantee of equal protection:
Section 21. No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens.
Section 22. All laws of a general nature shall have a uniform operation.
"The equal protection clauses of the state and federal constitutions do not prohibit legislative classifications or require identical treatment of different groups of people." State v. Leppert, 2003 ND 15, ¶ 7, 656 N.W.2d 718. Rather, the equal protection clause prohibits the government from treating individuals differently who are alike in all relevant aspects. Hamich, Inc. v. State ex rel. Clayburgh, 1997 ND 110, ¶ 31, 564 N.W.2d 640. Legislative classifications are subject to different levels of judicial scrutiny, and the level applied depends on the right infringed by the challenged classification. Leppert, at ¶ 7. There are three levels of scrutiny that are applied to equal protection claims:
We apply strict scrutiny to an inherently suspect classification or infringement of a fundamental right and strike down the challenged statutory classification "unless it is shown that the statute promotes a compelling governmental interest and that the distinctions drawn by the law are necessary to further its purpose." When an "important substantive right" is involved, we apply an intermediate standard of review which requires a "'close correspondence between statutory classification and legislative goals.'" When no suspect class, fundamental right, or important substantive right is involved, we apply a rational basis standard and sustain the legislative classification unless it is patently arbitrary and bears no rational relationship to a legitimate governmental purpose.
Gange v. Clerk of Burleigh County Dist. Court, 429 N.W.2d 429, 433 (N.D. 1988).
[¶16] Many courts that have considered equal protection challenges to statutes governing the commitment of sexually dangerous individuals compared to statutes governing the commitment of mentally ill individuals have applied a rational basis standard of review and concluded there was not an equal protection violation. See Hudson v. State, 825 So.2d 460, 468 (Fla. Dist. Ct. App. 2002); In re Detention of Samuelson, 727 N.E.2d 228, 236 (Ill. 2000); In re Detention of Williams, 628 N.W.2d 447, 453 (Iowa 2001); In re Detention of Petersen, 36 P.3d 1053, 1057 (Wash. Ct. App. 2000). Yet other courts applied strict scrutiny and also concluded equal protection was not violated. See In re Care and Treatment of Norton, 123 S.W.3d 170, 174 (Mo. 2003) (apply strict scrutiny, no equal protection violation); State v. Post, 541 N.W.2d 115, 130 (Wis. 1995) (court declined to decide which level of scrutiny to apply, because the statutes pass even the highest level).
[¶17] In State v. Nording, 485 N.W.2d 781 (N.D. 1992), this Court addressed whether N.D.C.C. ch. 12.1-04.1, which authorizes the commitment of a defendant who is found not guilty by reason of lack of criminal responsibility, violates equal protection because it does not provide the same rights and procedures as N.D.C.C. ch. 25-03.1 provides to civilly committed mentally ill individuals. We declined to decide whether a rational basis or heightened standard of review should be applied because the equal protection challenge would fail under either. Nording, at 784. We concluded Nording's equal protection rights were not infringed because "[a]lthough the goals are similar, the differences in the classifications justify different procedures and other safeguards to attain those goals," and therefore there is a close correspondence between the statutory classification and the legislative goals. Id. at 786.
[¶18] Similarly, we do not need to resolve which level of scrutiny applies in this case, because we conclude N.D.C.C. ch. 25-03.3 survives P.F.'s equal protection challenge under even the highest level of scrutiny. When strict scrutiny is applied the State must articulate a compelling governmental interest and must show the distinctions are necessary to further its purpose. Gange, 429 N.W.2d at 433.
[¶19] There are important differences between those committed because the court has determined they are sexually dangerous and those committed because of mental illness or chemical dependency. A sexually dangerous individual is:
an individual who is shown to have engaged in sexually predatory conduct and who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others. It is a rebuttable presumption that sexually predatory conduct creates a danger to the physical or mental health or safety of the victim of the conduct. For these purposes, mental retardation is not a sexual disorder, personality disorder, or other mental disorder or dysfunction.
N.D.C.C. § 25-03.3-01(8). Only those determined to be sexually dangerous may be committed under N.D.C.C. ch. 25-03.3. N.D.C.C. § 25-03.3-13. In contrast, a person may only be involuntarily committed under N.D.C.C. ch. 25-03.1 if they are:
mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property." Serious risk of harm" means a substantial likelihood of:
a. Suicide, as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;
b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;
c. Substantial deterioration in physical health, or substantial injury, disease, or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or
d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors.
N.D.C.C. § 25-03.1-02(11). The potential level of danger these two groups pose to society is different. Sexually dangerous individuals are distinctively dangerous due to the high probability that they will commit further acts of sexually predatory conduct if not confined in a secure facility.
[¶20] The purpose of N.D.C.C. ch. 25-03.3 is to protect the public, particularly children who are generally the victims of sexual abuse. Hearing on H.B. 1047 Before the Senate Judiciary Comm., 55th N.D. Legis. Sess. (March 5, 1997) (testimony of Attorney General Heidi Heitkamp). The legislation was enacted to stop the abuse of children and adults, which causes lifelong psychological and emotional harm, by removing the most dangerous offenders and providing them with treatment to allow them to safely return to the community. Id. at 9-10. Chapter 25-03.3, N.D.C.C., is intended "to provide a secure treatment program for individuals with a mental disorder who are likely to engage in harmful sexual conduct and, thus, pose a danger to society." Id. at 2. The State has a compelling interest in protecting the public, and that interest justifies treating sexually dangerous individuals differently.
[¶21] Sexually dangerous individuals present specialized treatment problems, which justify the distinct procedures and safeguards in N.D.C.C. ch. 25-03.3. The procedures used to treat mentally ill committees do not necessarily work on sexually dangerous individuals because the nature of the illness is different. See Minutes of Senate Judiciary Comm. 3 (March 5, 1997). Treatment for sexually dangerous individuals may be long term and take years before the individual is safe to be released, and treatment may require the use of different types of therapies. See Hearing on H.B. 1047 Before the Senate Judiciary Comm., 55th N.D. Legis. Sess. (March 5, 1997) (testimony of Attorney General Heidi Heitkamp); In re Detention of Thorell, 72 P.3d 708, 749-50 (Wash. 2003) (sexually violent predators have treatment issues distinct from those committed because of mental illness, their treatment needs are long term and the treatment modalities are different); Post, 541 N.W.2d at 324 (sexually violent persons pose specialized treatment problems and may require nontraditional therapies). The distinctions in N.D.C.C. ch. 25-03.3 are necessary to further its purposes of protecting the public and treating sexual predators.
[¶22] The heightened risk sexually dangerous individuals pose and the State's compelling interest in protecting the public justify the classification and differences in the treatment of sexually dangerous individuals, and the distinct procedures and safeguards further the State's interest in protecting the public. We conclude N.D.C.C. ch. 25-03.3 does not violate equal protection.

C
[¶23] As a part of P.F.'s equal protection argument, he also questions whether the district court retains any authority over the treatment a sexually dangerous individual receives while committed. During the commitment review hearing, P.F. requested the district court order that he receive chemical dependency treatment before receiving sex offender treatment. The court denied his request, stating, "I'm not sure that this is the appropriate hearing to make that determination. There may need to be a separate procedure or motion for that. I think all we're dealing with today is the continued commitment." P.F. claims the court erred in denying his request, and the court's decision subjects P.F. to a longer period of commitment because there was evidence alcohol dependency treatment is essential to his treatment plan and he could complete his sex offender treatment in a shorter amount of time if he receives alcohol dependency treatment first.
[¶24] We have already held that N.D.C.C. § 25-03.3-13 does not violate equal protection because the commitment of the sexually dangerous individual does not have to completely mirror the commitment of the mentally ill. P.F's argument might be more appropriately raised as a due process argument. A majority of this Court has held that the determination of the least restrictive treatment available is initially made by the executive director and this initial determination does not violate due process. In re G.R.H., 2006 ND 56, ¶¶ 21-2 7, 711 N.W.2d 587. We do not, however, limit the ability of a committed individual to challenge his continued commitment under due process if a case can be made that the statutory requirements are being violated. See, e.g., Youngberg v. Romeo, 457 U.S. 307, 322-25 (1982) (a civilly committed individual had a constitutionally protected interest in reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and minimally adequate training as reasonably may be required by these interests; decisions about what is minimally adequate or reasonable training may be left to a professional decisionmaker to decide, but limited judicial review of that decision is available); Bailey v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991) (claim for psychiatric treatment can succeed only if there is a showing that hospital psychiatrists' "presumptively valid" decision not to provide the requested treatment was not based on professional judgment). However, P.F. has not brought that challenge and we do not reach it. His argument that chemical dependency treatment must come first in order for his treatment to be the least restrictive, even if challenged under due process, would fail for lack of support.

III
[¶25] We hold N.D.C.C. § 25-03.3-17 does not violate the separation of powers doctrine by unconstitutionally delegating judicial authority to the executive director of DHS. We also hold N.D.C.C. ch. 25-03.3 does not violate equal protection. We affirm the district court's order for commitment and order denying P.F.'s motion to declare a statute unconstitutional.
[¶26] Carol Ronning Kapsner
Mary Muehlen Maring
Daniel J. Crothers
Dale V. Sandstrom
Gerald W. VandeWalle, C.J.