2008 ND 180

**Robert V. BOLINSKE, Petitioner**

v.

**North Dakota Secretary of State Alvin A. JAEGER and North Dakota Attorney General Wayne K. Stenehjem, Respondents.**

No. 20080222.

Supreme Court of North Dakota.

Sept. 29, 2008.

Robert V. Bolinske, Bismarck, N.D., pro se.

PER CURIAM.

[¶ 1]   Robert V. Bolinske petitioned this Court to invoke its original jurisdiction and issue a writ of mandamus directing Secretary of State Alvin A. Jaeger to accept a petition to place Bolinske's name on the November 4, 2008, general election ballot for the unexpired four-year term for justice of the North Dakota Supreme Court. Bolinske claims there is a vacancy on the ballot because there is currently only one candidate for that position and Jaeger was required by North Dakota law to place Bolinske's name on the general election ballot. Because of time constraints for the secretary of state to certify the general election ballot to county auditors, we issued an order on September 10, 2008, denying Bolinske's request for an injunction and for a writ of mandamus and stating that a written opinion would be filed at a later date. We conclude Jaeger correctly applied North Dakota law in refusing to place Bolinske's name on the ballot for the general election and Bolinske failed to establish the general election ballot access requirements for a no-party candidate for judge of the supreme court violate his equal protection rights.

I

[¶ 2]   In a letter dated September 4, 2008, Jaeger rejected Bolinske's petition to place his name on the November 4, 2008, general election ballot for the unexpired four-year term for justice of the North Dakota Supreme Court, stating:

According to N.D.C.C. § 16.1–11–01, a candidate for Justice of the Supreme Court, intending to have his or her name placed on the November general ballot, is to be nominated in the state's primary election. This year's primary election was held on June 10, 2008. The filing deadline for that election was 4:00 p.m. on Friday, April 11, 2008. You did not file petitions to have your name placed on the primary election ballot for this office.

In N.D.C.C. § 16.1–11–08, this office is listed as one that cannot be identified with a political party. It is known as a no-party position. According to N.D.C.C. § 16.1–12–02, "Certificates of nomination for nominees for an office to be filled at a general or special election, *except for an office appearing on the no-party ballot,* may be made as provided by this section." (Underlined emphasis added) Therefore, because a no-party office is specifically excluded by this section from filing a certificate of nomination for the general election, it is not possible for me to place your name on the general election ballot for this position.

In prior communication with this office, you stated a vacancy existed because the name of only one person appears on the November ballot for this position. N.D.C.C. § 16.1–12–09 states, "A vacancy in the no-party ballot must be deemed to exist when: 1. A candidate nominated at the primary election dies, resigns, or otherwise becomes disqualified to have the candidate's name printed on the ballot at the general election." None of that applies to this position for the upcoming general election. According to N.D.C.C. § 16.1–11–37, the name of the two persons receiving the highest number of votes are considered to have been nominated as candidates for this no-party position. In the June election, only one candidate filed to have their name placed on the ballot. Subsequently, that is the person the state's voters nominated to advance to the general election, as is required by N.D.C.C. § 16.1–11–01. There was no vacancy created by the fact that only one person was nominated.

[¶3] Bolinske then petitioned this Court to exercise its original jurisdiction and issue a writ of mandamus directing Jaeger to place Bolinske's name on the ballot for the general election.

## II

[¶4] This Court's authority to exercise original jurisdiction under N.D. Const. art. VI, § 2, is discretionary, which cannot be invoked as a matter of right. *State ex rel. Lesmeister v. Olson,* 354 N.W.2d 690, 692 (N.D.1984). This Court will determine for itself whether or not to exercise its original jurisdiction. *Id.* Under N.D.C.C. § 32–34–01, a writ of mandamus may be issued by this Court to compel the performance of an act which the law specifically requires a state official to perform. The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. N.D.C.C. § 32–34–02.

## III

[¶5] Bolinske argues a vacancy exists on the ballot for the November 4, 2008, general election for the unexpired four-year term of justice of the North Dakota Supreme Court. He claims there is a vacancy on the ballot because there is room on the ballot for two candidates and there is presently only one candidate for the position. He claims the delineation of when a vacancy is deemed to exist in N.D.C.C. § 16.1–12–09 is not exclusive and a vacancy may arise when no one else chooses to run against a single candidate on the ballot. He argues an election is defined as the act of choosing one or more from a greater number of persons and there cannot be an election without at least two candidates on the ballot for the same position.

[¶6] Bolinske's arguments require consideration of North Dakota's statutes for elections, which are contained in N.D.C.C. title 16.1. *See* N.D.C.C. § 16.1–01–02. Statutory interpretation is a question of law. *In re P.F.,* 2008 ND 37, ¶11, 744 N.W.2d 724. The primary purpose of statutory interpretation is to determine legislative intent. *Id.* Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.

[¶7] North Dakota law designates the secretary of state as the supervisor of elections. N.D.C.C. § 16.1–01–01(1). North Dakota law generally differentiates between a primary election and a general election. *See* N.D.C.C. chs. 16.1–11 and 16.1–13. As relevant to this case, North Dakota law authorizes a primary election for the nomination of candidates for judges of the supreme court, with requirements for placing the name of a candidate on the primary ballot. *See* N.D.C.C. §§ 16.1–11–01 and 16.1–11–06(2). Under N.D.C.C. § 16.1–11–08, candidates for the office of judge of the supreme court may not be identified by party affiliation. Under N.D.C.C. § 16.1–11–37, the number of persons nominated as candidates "for any one no-party office must be that number of persons who receive the highest number of votes [at the primary election] and who total twice the number of available positions for the office if that many persons are candidates for nomination." All persons nominated at a primary election in accordance with the provisions of N.D.C.C. ch. 16.1–11 are eligible as candidates to be voted for at the ensuing general election.

N.D.C.C. § 16.1–11–39. Upon completion of the canvass for a primary election under N.D.C.C. § 16.1–15–40, "the secretary of state shall mail to each candidate nominated a notice of the candidate's nomination stating that the candidate's name will be placed upon the official ballot to be voted for at the ensuing general election."

[¶ 8] Under N.D.C.C. § 16.1–13–04, the names of all candidates of no-party designation, who are shown to have been nominated for office in accordance with certificates of nomination filed with the secretary of state's office, must be placed by the secretary of state on the official ballot to be voted for at the next general election. An individual who was a candidate for a no-party office at a primary election and who was defeated for the nomination at that election may not have that individual's name printed on the official ballot for the ensuing general election for the same office except to fill a vacancy occurring on the ballot. N.D.C.C. § 16.1–13–06.

[¶ 9] Chapter 16.1–12, N.D.C.C., addresses certificates of nomination and vacancies. Section 16.1–12–02, N.D.C.C., specifies the form for certificates of nomination by petition for nominees for an office to be filled at a general election, "except for an office appearing on the no-party ballot." Section 16.1–12–09, N.D.C.C., delineates the method for filling a vacancy existing on a no-party ballot and provides, in part:

Whenever a vacancy exists on a no-party ballot for a state office or for judge of a district court, such vacancy may be filled by filing with the secretary of state, at least sixty days prior to the general election and before four p.m. on the sixtieth day, a written petition as provided in section 16.1–11–06, stating that the petitioner desires to become a candidate for election to the office for which a vacancy exists. If the petition is mailed, it must be in the physical possession of the secretary of state before four p.m. on the sixtieth day prior to the general election. The petition for the nomination of any person to fill such vacancy must be signed by qualified electors equal in number to at least two percent of the total vote cast for the office of governor in the state or district, at the most recent general election at which the office of governor was voted upon, but in no case may more than three hundred signatures be required.

. . . .

A vacancy in the no-party ballot must be deemed to exist when:

1.  A candidate nominated at the primary election dies, resigns, or otherwise becomes disqualified to have the candidate's name printed on the ballot at the general election.

2.  No candidates were nominated at the primary election because the office did not yet exist.

3.  The timing of the vacancy in an office makes it impossible to have it placed on the primary ballot.

[¶ 10] We conclude the plain language of those statutes, when read together, contemplates the nomination of candidates for judge of the supreme court through the primary election process, and the two candidates for each designated position receiving the highest number of votes at the primary election become the nominated candidates for that position at the general election. *See* N.D.C.C. §§ 16.1–11–01; 16.1–11–06(2); 16.1–11–08; 16.1–11–37; 16.1–11–39; 16.1–13–04. We conclude the plain language of N.D.C.C. § 16.1–12–09 does not support an interpretation that a "vacancy exists on a no-party ballot" if only one candidate runs for a designated position at the primary election, is nomi-

nated, and is listed on the general election ballot. Rather, we construe the plain language of N.D.C.C. § 16.1–12–09, to mean a vacancy on a no-party ballot for the general election exists when: (1) a candidate nominated at the primary election dies, resigns, or otherwise becomes disqualified to have the candidate's name printed on the ballot at the general election; (2) no candidates were nominated at the primary election because the office did not yet exist; or (3) the timing of the vacancy in an office makes it impossible to have it placed on the primary ballot. Section 16.1–12–09, N.D.C.C., defines the circumstances of a vacancy on the ballot for purposes of the general election in language intertwined with the primary election and contemplates that the results of the primary election determine the field of candidates nominated for offices on the no-party ballot. In the context of North Dakota's election laws and the statutory scheme for narrowing the field of nominees for no-party positions at the primary election, we reject Bolinske's claim there is a vacancy on the no-party ballot for the general election under these circumstances, because that interpretation would circumvent the nomination process for candidates for a position on the no-party ballot in the primary election.

[¶ 11] We hold the secretary of state did not have a duty to place Bolinske's name on the ballot in this case because there is not a vacancy on the ballot within the meaning of N.D.C.C. § 16.1–12–09. We therefore conclude Bolinske has not demonstrated he is entitled to a writ of mandamus directing Jaeger to place Bolinske's name on the ballot for the November 2008, general election.

IV

[¶ 12] Bolinske argues that construing the election statutes in this manner deprives him of equal protection under the Fourteenth Amendment of the United States Constitution. He claims a candidate for a political office is entitled to be on the ballot by following the same procedure he followed, but he is not entitled to be on the ballot because the position he seeks is a no-party office. Relying on *Snortland v. Crawford*, 306 N.W.2d 614, 626–28 (N.D.1981), Bolinske asserts a statutory classification differentiating between a no-party office and a political office is subject to strict scrutiny and there is no compelling state interest in treating the classifications differently.

[¶ 13] Bolinske's reliance on language in *Snortland* to support his equal protection argument is misplaced because that language resolved a claim that a campaign finance law impermissibly burdened the candidate's right of free expression under a "closest scrutiny" analysis for the First Amendment, made applicable to the states through the Fourteenth Amendment, and N.D. Const. art. 1, § 4. 306 N.W.2d at 626–28. Bolinske, however, frames his argument under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

[¶ 14] Under the generally accepted standards for equal protection analysis, Bolinske has not marshaled a persuasive argument to demonstrate that a classification based on a no-party office and a political office violates equal protection. In *State v. Leppert*, 2003 ND 15, ¶ 7, 656 N.W.2d 718, this Court recognized the equal protection clause does not prohibit legislative classifications or require identical treatment of different groups of people and stated legislative classifications are subject to different levels of scrutiny depending on the right infringed by the challenged classification. This Court also said that under the federal constitution, unless a statute invokes strict scrutiny because it

interferes with a fundamental right or discriminates against a suspect class, the statute will ordinarily survive an equal protection challenge if it is rationally related to a legitimate governmental purpose, and heightened scrutiny or intermediate scrutiny is generally applied only in cases involving classifications based on sex or illegitimacy. *Id.* at ¶ 8.

[¶ 15] The United States Supreme Court has recognized that the existence of barriers for candidate access to the ballot "does not of itself compel close scrutiny," and "[i]n approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." *Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). In assessing constitutional challenges to state election laws that restrict access to the ballot, the United States Supreme Court has not formulated a "litmus-paper test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). Rather, decisions in this area of constitutional adjudication are a matter of degree and involve consideration of the facts and circumstances behind the law, the interest the state seeks to protect by placing restrictions on candidacy, and the nature of the interest of those whom may be burdened by the restrictions. *Id.*

[¶ 16] The United States Supreme Court has said that a primary election similar to the one authorized by North Dakota law is " 'an integral part of the entire election process ... [that] functions to winnow out' " and narrow the field of nominated candidates. *Munro v. Socialist Workers Party,* 479 U.S. 189, 196, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986) (quoting *Storer,* 415 U.S. at 735, 94 S.Ct. 1274). In *Munro,* the Supreme Court upheld a Washington state statute that required a minor party candidate for a political office to receive at least one percent of all votes cast for that office in the state's primary election before the candidate could be placed on the general election ballot. 479 U.S. at 191–92, 107 S.Ct. 533. In *Munro,* the Supreme Court held states have a right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot for a general election. *Id.* at 193–94, 107 S.Ct. 533.

[¶ 17] Here, Bolinske was not denied access to the ballot at the primary election; rather, he did not seek to have his name placed on the primary ballot and advance to the general election under the requirements for nomination under North Dakota law. Whether a statute is unconstitutional is a question of law, and a statute will be upheld unless its challenger demonstrates the statute is unconstitutional. *Best Products Co., Inc. v. Spaeth,* 461 N.W.2d 91, 96 (N.D.1990). A legislative act is presumed to be constitutional, and any doubt about its constitutionality must, where possible, be resolved in favor of its validity. *Southern Valley Grain Dealers Ass'n v. Board of County Comm'rs,* 257 N.W.2d 425, 434 (N.D.1977). A party raising a constitutional challenge must bring up the "heavy artillery" or forego the attack entirely. *Effertz v. North Dakota Workers' Comp. Bureau,* 481 N.W.2d 218, 223 (N.D.1992). We conclude Bolinske has not demonstrated the general election ballot access requirements for a no-party candidate for judge of the supreme court, which generally require nomination through the primary election, violate his constitutional rights.

V

[¶ 18] We deny Bolinske's petition for a writ of mandamus.

[¶ 19] ALLAN L. SCHMALENBERGER, D.J., Acting Chief Justice, WILLIAM F. HODNY, S.J., BENNY A. GRAFF, S.J., EVERETT NELS OLSON, S.J., and RONALD E. GOODMAN, S.J., concur.

[¶ 20] The Honorable ALLAN L. SCHMALENBERGER, D.J., Acting Chief Justice, the Honorable WILLIAM F. HODNY, S.J., the Honorable BENNY A. GRAFF, S.J., the Honorable EVERETT NELS OLSON, S.J., and the Honorable RONALD E. GOODMAN, S.J., sitting in place of the Honorable GERALD W. VANDE WALLE, C.J., the Honorable DALE V. SANDSTROM, the Honorable MARY MUEHLEN MARING, the Honorable CAROL RONNING KAPSNER, and the Honorable DANIEL J. CROTHERS, disqualified.