Jensen, Justice.
[¶ 1] Francis Franson appeals from a judgment entered after the district court granted Hess Corporation's ("Hess") motion for summary judgment and Agri Industries, Inc.'s ("Agri") motion for prejudgment interest. Hess cross-appeals from the parts of the district court's judgment rejecting Hess' alternative arguments for dismissal. We affirm the portion of the district court's judgment granting summary judgment to Hess. We reverse the portion of the district court's judgment granting Agri's motion for prejudgment interest.
I
[¶ 2] In 2008, Hess hired Geokinetics USA, Inc. to complete seismographic testing on Franson's property, which took place in mid-December 2008. Shortly after, Franson noticed a loss of pressure from his water well between December 2008 and January 2009. Franson hired Agri to drill a new well in January 2009. In March 2013, Agri sued Franson for not paying for its well-drilling services.
[¶ 3] In May 2014, the district court granted Franson's motion to commence a third-party action against Hess for the amounts he owed Agri. Franson served the third-party complaint against Hess in December 2014. In the third-party complaint, Franson alleged the damage to his well was a direct result of Hess' seismographic work on his property. In March 2017, Hess moved for dismissal or summary judgment, arguing Franson's claim expired under the six-year statute of limitations, Franson's third-party complaint against Hess failed to state a claim upon which relief could be granted, and Hess could not be liable for torts of its independent contractor. The district court determined Hess was not entitled to dismissal under the statute of limitations and Franson's third-party complaint was adequate under N.D.R.Civ.P. 8 and 14. However, the district court granted Hess' motion for summary judgment, concluding Hess could not be held liable for the negligence of its independent contractor and Franson did not comply with N.D.C.C. § 38-11.1-06, which required a certified water test to recover against a mineral developer for damage to a water supply.
[¶ 4] The district court held a jury trial on the remaining issues between Agri and Franson, and the jury returned a verdict in favor of Agri in the amount of $77,924.85, the exact amount invoiced to Franson for the services. The jury verdict did not mention interest. Agri moved for an award of prejudgment interest. The district court determined Agri was entitled to prejudgment interest because the damages *148 were certain or capable of being made certain by calculation.
II
[¶ 5] On appeal, Franson argues the district court erred in granting Hess' summary judgment motion because N.D.C.C. § 38-11.1-06 does not require a certified water test to recover from Hess. This Court reviews summary judgment as follows:
Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.
Hallin v. Inland Oil & Gas Corp. , 2017 ND 254, ¶ 6, 903 N.W.2d 61 (quoting THR Minerals, LLC v. Robinson , 2017 ND 78, ¶ 6, 892 N.W.2d 193 ).
[¶ 6] Franson argues the district court misinterpreted N.D.C.C. § 38-11.1-06. This Court has stated:
Statutory interpretation is a question of law, fully reviewable on appeal. In re P.F. , 2008 ND 37, ¶ 11, 744 N.W.2d 724. The primary purpose of statutory interpretation is to determine legislative intent. Estate of Elken , 2007 ND 107, ¶ 7, 735 N.W.2d 842. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05.
Baukol Builders, Inc. v. Cty. of Grand Forks , 2008 ND 116, ¶ 22, 751 N.W.2d 191.
[¶ 7] Section 38-11.1-06, N.D.C.C., provides:
If the domestic, livestock, or irrigation water supply of any person who owns an interest in real *149 property within one-half mile [804.67 meters] of where geophysical or seismograph activities are or have been conducted or within one mile [1.61 kilometers] of an oil or gas well site has been disrupted, or diminished in quality or quantity by the drilling operations and a certified water quality and quantity test has been performed by the person who owns an interest in real property within one year preceding the commencement of drilling operations, the person who owns an interest in real property is entitled to recover the cost of making such repairs, alterations, or construction that will ensure the delivery to the surface owner of that quality and quantity of water available to the surface owner prior to the commencement of drilling operations. Any person who owns an interest in real property who obtains all or a part of that person's water supply for domestic, agricultural, industrial, or other beneficial use from an underground source has a claim for relief against a mineral developer to recover damages for disruption or diminution in quality or quantity of that person's water supply proximately caused from drilling operations conducted by the mineral developer.
(Emphasis added). The plain language of N.D.C.C. § 38-11.1-06 requires a certified water quality or quantity test in order to recover under the statute. It is undisputed that Franson did not complete a certified water quality or quantity test on his well within one year preceding the drilling operations. Accordingly, the district court did not err in interpreting N.D.C.C. § 38-11.1-06 to require certified water testing to proceed in an action against a mineral developer. Therefore, the district court did not err in granting Hess' motion for summary judgment because Franson did not complete a certified water test.
[¶ 8] On cross-appeal, Hess argues the district court erred by concluding the statute of limitations had not run and Franson's third-party complaint complied with the requirements of N.D.R.Civ.P. 8 and 14. Because we affirm the district court's order granting summary judgment to Hess, we decline to address the other issues raised by Hess as unnecessary to this decision. See generally Johnson v. Shield , 2015 ND 200, ¶ 14, 868 N.W.2d 368.
III
[¶ 9] Franson argues the district court erred by granting Agri's post-trial motion for prejudgment interest because the jury instruction on interest became the law of the case. The district court concluded N.D.C.C. § 32-03-04 requires an award of prejudgment interest if damages are certain or capable of being made certain by calculation. The district court determined the amount of damages was certain because the jury awarded an exact amount which was the number on the invoice for Agri's services. We reverse the district court's order granting Agri prejudgment interest because the jury instruction on interest became law of the case.
[¶ 10] This Court has said, "[w]hether interest is to be paid in a contract action is a question of law to be determined from the contract, and not a question of fact for the jury." Felco, Inc. v. Doug's North Hill Bottle Shop, Inc. , 1998 ND 111, ¶ 25, 579 N.W.2d 576 (citations omitted). However, when parties fail to object to a jury instruction, the instruction generally becomes law of the case regardless of whether it is a misstatement of the law. Bjorneby v. Nodak Mut. Ins. Co. , 2016 ND 142, ¶ 9, 882 N.W.2d 232. Here, neither party objected to the inclusion of a jury instruction on interest. Therefore, the following instruction became law of the case: "If you return a verdict awarding damages to the Plaintiff, you may award interest at a rate no greater than six and one-half percent (6.50%) per annum from the date of the wrongful act."
[¶ 11] An additional jury instruction on the measure of damages provided:
The measure of damages for breach of contract is the amount which will compensate for all the damage proximately caused by the breach or which, in the ordinary course of things, would be likely to result from the breach.
Damages must be limited to those damages the parties entering into the cont[r]act actually anticipated or which were so probable and natural the damages would reasonably have been anticipated. No damages can be recovered for a breach of contract if the damages are *150 not clearly ascertainable in both their nature and origin.
Damages must be reasonable and may not be more than the amount that would have been gained by the full performance of the contract.
[¶ 12] The special verdict form provided several questions, including whether Agri and Franson had a valid contract, if anyone else owed Agri for its services, and whether there was a breach of contract. The verdict form also included a question about the amount of damages to which Agri was entitled. The verdict form did not mention awarding interest. The jury found Agri had a valid contract with Franson, which Franson breached by failing to pay for the services provided by Agri. The jury also found the contract did not require payment for Agri's services from anyone other than Franson. The jury ultimately decided Franson was responsible for damages to Agri in the amount of $77,924.85.
[¶ 13] This Court upholds jury verdicts when possible, and we exercise a limited review of jury findings. Bjorneby , 2016 ND 142, ¶ 12, 882 N.W.2d 232. Because neither party objected to the jury instruction on interest or the verdict form, the district court erred in awarding prejudgment interest. The interest instruction placed the decision on interest with the jury, especially when read with the damages instruction, which did not specifically exclude interest in the award. The jury provided its damage award on the verdict form after they were given the instruction on awarding interest. We uphold the jury's decision that Franson owed Agri $77,924.85. In light of the instruction on interest which became law of the case, we reverse the district court's order granting Agri's motion for prejudgment interest.
IV
[¶ 14] We affirm the portion of the district court's judgment granting summary judgment to Hess. We reverse the portion of the district court's judgment granting Agri's motion for prejudgment interest.
[¶ 15] Jon J. Jensen
Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
VandeWalle, Chief Justice, concurring specially.
[¶ 16] I concur with the majority opinion in part III, as to the issue of prejudgment interest. For the following reasons I concur in the result in part II of the opinion, regarding the necessity of a certified water quality and quantity test under the provisions of N.D.C.C. § 38-11.1-06.
[¶ 17] While I have concerns about a requirement that the certificate be obtained within a year preceding the drilling or seismic operations which are alleged to have damaged the water wells where the owner of the wells has no notice of the drilling or seismic operations, here it is apparently undisputed that Franson received notice of the seismic operations as required under N.D.C.C. § 38-08.1-04.1(5).[1] Although that statute requires the *151 operator of the land to be given notice "at least seven days before the commencement of any geophysical exploration activity, unless waived by mutual agreement of both parties" it is also apparently undisputed that here the notice was given some six months before the geophysical operations began. A landowner concerned about the effect of those operations on the water wells on the land would be well advised to obtain the certified water quality and quantity test as quickly as possible after receiving the required notice. Here there was a six-month window in which to obtain the certificate. Whether that is possible within a seven-day window in order to meet the requirement in N.D.C.C. § 38-11.1-06 that the certificate be obtained within one year of the commencement of drilling operations is not before us.
[¶ 18] However, to the extent that Franson relies on N.D.C.C. § 38-11.1-06 for his cause of action, I must agree with the majority opinion. While Franson's short and terse third-party complaint against Hess does not refer to the statute, his brief on appeal seems to argue the interpretation of that statute as the basis for his cause of action. It is not clear to me, however, that the enactment in 1979 of N.D.C.C. ch. 38-11.1, entitled "Oil and Gas Production Damage Compensation" and the amendments thereto were intended to replace a common law action for damage to water sources, to the extent that only if the certified water quality and quantity test was obtained within a year prior to the commencement of the geophysical operations would the water well owner be able to bring a cause of action, notwithstanding the difficulty in proving cause and effect without that test. Perhaps the answer lies in N.D.C.C. § 1-01-06 which provides that "In this state there is no common law in any case in which the law is declared by the code."
[¶ 19] Nevertheless, it is an unusual statute that requires the gathering of evidence to sustain a cause of action before the injury occurs and, if the evidence is not gathered before the injury occurs, the party damaged is left without a remedy for that damage. My uncertainty that the Legislature intended such a result is bolstered by the legislative history surrounding the 1987 amendment to N.D.C.C. § 38-11.1-06, which added the one year provision to the statute. In testimony before the Senate Natural Resources Committee on February 5, 1987, the committee minutes reflect that Rosella Sand, representing the State Water Commission and the State Engineer's Office, "appeared in support of the bill [SB 2304], she said this bill does not create a new remedy so much as it allows for damage to existing rights." (Emphasis added).
[¶ 20] In any event, the question of whether or not N.D.C.C. § 38-11.1-06 created an exclusive remedy for damage done *152 by geophysical or seismographic activities was not before us in this appeal. On the narrow issue presented in this appeal, I concur in the result reached by the majority opinion.
[¶ 21] Gerald W. VandeWalle, C.J.
Daniel J. Crothers

Hess assumes the term "drilling operations" includes geophysical operations as well as the actual drilling of an oil or gas well. Neither Franson nor the majority take issue with that assumption nor, for purposes of this opinion, do I. Section 38-11.1-03(2), N.D.C.C., defines the term as follows:
"Drilling operations" means the drilling of an oil and gas well and the production and completion operations ensuing from the drilling which require entry upon the surface estate and which were commenced after June 30, 1979, and oil and gas geophysical and seismograph exploration activities commenced after June 30, 1983.
But for this binding definition, one might conclude the term "drilling operations" referred to the drilling of the oil and gas well since § 38-11.1-06 holds the "mineral developer," not the entity conducting the geophysical or seismic activities responsible to pay the damages caused by those activities. "Mineral developer" is defined by § 38-11.1-03(3) to mean "the person who acquires the mineral estate or lease for the purpose of extracting or using the minerals for nonagricultural purposes." The entity conducting the seismographic activities is not a party to this action.
Again, it is undisputed that Franson has never acquired the certified water quality and quantity test required and, unless the oil and gas wells described in § 38-11.1-06 have never been drilled, such a test now would be too late.